UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | |
|---|---|
| DANA BLACKMON as surviving spouse, and Representative of the Estate of JACOB BLACKMON <br><br> Plaintiff, <br><br> v. <br><br> TEXAS DEPARTMENT OF CRIMINAL JUSTICE: ALLAN B. POLONSKY UNIT, UTMB CORRECTIONAL MANAGED CARE; DANIEL DICKERSON, APRIL PERISINGER, TERESA JACKSON, and DR. ERNESTINE JULYE <br><br> Defendants. | CIVIL ACTION NO. 9:22-cv-182 <br><br> JURY TRIAL DEMANDED |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff DANA BLACKMON ("Plaintiff"), by and through her attorneys, brings this action on her behalf, and on behalf of her deceased husband, JACOB ALLEN BLACKMON, for damages and other legal and equitable relief from Defendants, TEXAS DEPARTMENT OF CRIMINAL JUSTICE: ALLAN B. POLONSKY UNIT, UTMB CORRECTIONAL MANAGED CARE, DANIEL DICKERSON, APRIL PERISINGER, TERESA JACKSON, and DR. ERNESTINE JULYE (collectively "Defendants"), for violations of rights under the United States Constitution, Texas state tort claims, and any other cause(s) of action that can be inferred from the facts set forth herein.

## INTRODUCTION

1.  On November 3, 2020, Jacob Allen Blackmon ("Mr. Blackmon") died while in custody of the Texas Department of Criminal Justice ("TDCJ") at Defendant Texas Department of Criminal Justice Allan B. Polunsky Unit ("Polunsky Unit") and under the care of Defendant UTMB Correctional Managed Care ("UTMB") as a result of the deliberate denial of treatment for colon cancer. Defendants were aware of the seriousness behind Mr. Blackmon's medical concerns for months but wantonly delayed appropriate and necessary medical treatment. Plaintiff, as Mr. Blackmon's surviving spouse and as the Representative of his Estate, brings this action to hold Defendants accountable for the death of her husband for their deliberate failures to provide him basic medical care to treat his cancer.

2.  As a result of Defendants' unlawful actions, Plaintiff is entitled to recover for damages pursuant to violations of rights secured under the United States Constitution, including protections against the denial of basic human needs under the Eighth Amendment, actionable under 42 U.S.C. § 1983; wrongful death actionable under 42 U.S.C. § 1983, and wrongful death actionable under TEX. CIV. PRAC. & REM. CODE § 71.004.

## JURISDICTION AND VENUE

3.  This Court has jurisdiction over this action pursuant to: (i) 28 U.S.C.A. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States; (ii) 28 U.S.C.A. § 1343(a)(3) which confers original jurisdiction upon this Court in any civil action to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; (iii) 28 U.S.C.A § 1343(a)(4), which confers original jurisdiction

upon this Court in any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights a civil action to recover damages or to secure equitable; and (iv) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; 42 U.S.C. §§ 2000e *et seq*., as amended.

4. The Court's supplemental jurisdiction is invoked by 28 U.S.C.A. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts such that they form part of the same case or controversy under Article III of the United States Constitution.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

## PARTIES

6. Dana Blackmon is and has been, at all relevant times, a citizen of the United States and is a resident of the State of Texas. Ms. Blackmon was legally married to Jacob Blackmon at the time of his death on November 3, 2020. Ms. Blackmon sues on behalf of herself, as the wrongful death beneficiary of her husband; and as the personal representative and administrator of the Estate of Mr. Blackmon.

7. Texas Department of Criminal Justice: Allan B. Polonsky Unit is a local incarceration facility within Polk County, Texas. The Polonsky Unit establishes, operates, and supervises all operations and policies regarding the care of people imprisoned within the facility. The Polonsky Unit further is responsible for the implementation of the facility's budget, policies, procedures, practices and customs; as well as the acts and omissions of the detention officers and

employees based on the training and discipline of each detention officer and employee. The Polonsky Unit is within the Eastern District of Texas.

8. UTMB Correctional Managed Care is a healthcare entity that oversees and provides healthcare services to individuals imprisoned in Defendant Polonsky Unit. UTMB is establishes and supervises the medical treatment, inmate health services, and overall healthcare operations in coordination with Defendant Polonsky Unit. UTMB is further responsible for the implementation of policies, procedures, and customs, as well as the acts and omissions of its employees based on the training and discipline of each employee.

9. Daniel Dickerson is the warden for Defendant Polonsky Unit. As the warden, Mr. Dickerson is the ultimate authority for all operations and all matters within Defendant Polonsky Unit. Defendant Dickerson is ultimately responsible for the overall wellbeing of the individuals under his care imprisoned at Defendant Polonsky Unit. Defendant Dickerson is further responsible for the discipline of the officers and employees operating within Defendant Polonsky Unit. At all relevant times, Defendant Dickerson was acting under the color of law as the warden for Defendant Polonsky Unit. Defendant Dickerson is sued in his individual capacity.

10. Nurse April Persinger is an official nurse under the Texas Occupations Code for Health Professions. Defendant Perisinger is employed with Defendant UTMB and operates at Defendant Polonsky Unit. At all relevant times, Defendant Perisinger was acting under the color of law as a registered nurse in coordination with other employees at Defendant Polonsky Unit. Defendant Perisinger is sued in her individual capacity.

11. Nurse Teresa Jackson is an official nurse under the Texas Occupations Code for Health Professions. Defendant Jackson is employed with Defendant UTMB and operates at Defendant Polonsky Unit. At all relevant times, Defendant Jackson was acting under the color of

law as a registered nurse in coordination with other employees at Defendant Polonsky Unit. Defendant Jackson is sued in her individual capacity.

12. Doctor Ernestine Julye is medical doctor under the Texas Occupations Code for Health Professions. Defendant Julye is employed with Defendant UTMB and operates at Defendant Polonsky Unit. At all relevant times, Defendant Julye was acting under the color of law as a medical doctor in coordination with other employees at Defendant Polonsky Unit. Defendant Julye is sued in her individual capacity.

## STATEMENT OF THE FACTS

13. The Texas Department of Criminal Justice imprisoned Mr. Blackmon at the on January 12, 1994, and held him under its custody until his death on November 3, 2020. Mr. Blackmon was specifically imprisoned at Defendant Polonsky Unit.

14. In February 2020, Mr. Blackmon first reported to officials at Defendant Polonsky Unit that he had significant pain in his abdomen. The abdominal pain was the first symptom that Mr. Blackmon experienced related to his colon cancer.

15. However, employees at Defendant Polonsky Unit did not provide any treatment. In addition, employees of Defendant UTMB blamed Mr. Blackmon's experiences of excruciating pain on new medication, but did not conduct any medical evaluation at this time.

16. From February to May 2020, Mr. Blackmon's abdominal pain and suffering escalated. As the pain progressed, Mr. Blackmon began complaining of increased pain in his rectum.

17. Throughout this time, Mr. Blackmon made multiple requests for medical treat through filing sick call slips. A sick call is an official and recorded request for medical treatment by an imprisoned person at Defendant Polonsky Unit. The purpose of a "sick call slip" is to

5

PLAINTIFF'S ORIGINAL COMPLAINT

ultimately receive appropriate care for medical needs from the employees of Defendants Polonsky Unit and UTMB.

18. Mr. Blackmon's sick call slips officially informed the medical staff of Defendants Polonsky Unit and UTMB about severe and ongoing pain combined with intermittent diarrhea and constipation. Despite several sick call slips, Mr. Blackmon's requests for medical treatment were ignored.

19. On or around June 10, 2020, a physician's assistant ("PA"), Reginald Wallace, from Defendant UTMB finally saw Mr. Blackmon. During the visit, Mr. Blackmon informed the PA of his significant experiences of pain and requested that the PA run as many tests as possible. PA Wallace ultimately tested Mr. Blackmon's urine and feces to determine the presence of a bacterial infection or other medical issues. Mr. Blackmon then waited several weeks to for any follow-up of the test results, but was never informed of the test results.

20. In the interim, Mr. Blackmon continued to suffer excruciating pain and other significant symptoms. In addition, Mr. Blackmon's symptoms escalated as he began bleeding from his rectum. Mr. Blackmon continually filed numerous sick call slips to officially notify employees of Defendants Polonsky Unit and UTMB of his need for immediate medical attention. Despite the official notice of significant and serious symptoms, employees of Defendants Polonsky Unit and UTMB failed to provide any response.

21. During this time, Mr. Blackmon also informed Plaintiff of his symptoms and the lack of any response by the employees of Defendants Polonsky Unit and UTMB.

22. On June 30, 2020, the results of the medical tests ordered by PA Wallace. The tests of Mr. Blackmon's feces and urine were negative for the presence of any bacterial infection. However, a fecal immunochemical test ("FIT") of Mr. Blackmon's feces did come back positive,

indicating the presence of blood in his feces. Such a positive test result is an indication of colon cancer.

23. As a result, PA Paul Reilley, an employee of Defendant UTMB, filled out a health service referral request on July 2, 2020. The health service referral request ultimately requested that Mr. Blackmon receive an expedited referral to a gastroenterologist for colon cancer screening. At this point, Defendants Polonsky Unit and UTMB were officially on notice that Mr. Blackmon may have colon cancer. In addition, any employee of Defendants Polonsky Unit and UTMB would be aware that Mr. Blackmon may have colon cancer based on his official paperwork.

24. Despite the expedited request, Mr. Blackmon was not taken to see a gastroenterologist for colon cancer screening. Rather, on or around July 17, 2020, Mr. Blackmon was taken to see Defendant Julye, a doctor employed with Defendant UTMB at Defendant Polonsky Unit.

25. Defendant Julye conducted an evaluation of Mr. Blackmon, and conducted an exam of his rectum. Doctor Blackmon's evaluation confirmed that Mr. Blackmon's had a bump at or around his colon. But Defendant Julye ignored the bump, the previous test results, and Mr. Blackmon's concerns. Rather, Defendant Julye determined that Mr. Blackmon had a bacterial infection of prostatitis, despite tests confirming that no bacteria was present.

26. Throughout the exam, Defendant Julye verbally and wantonly ridiculed Mr. Blackmon for his belief that he had colon cancer or that his symptoms were significantly serious. Again, nothing was done to examine Mr. Blackmon's colon or try to determine why he was experiencing such pain in that area despite the positive FIT the month prior.

27. Following the exam, Mr. Blackmon's symptoms worsened, as he experienced significantly more pain, blood in his feces, and was having between twelve (12) and fifteen (15)

bowel movements per day. At this time, Plaintiff began calling and writing letters to the employees of Defendants Polonsky Unit and UTMB in order for Mr. Blackmon to receive appropriate care.

28. Despite the worsening conditions, Defendant Julye reiterated to Plaintiff that nothing was wrong with her husband's colon, and that Mr. Blackmon's concerns about colon cancer were not serious.

29. Throughout this time, Mr. Blackmon continued making sick calls, saying, "please help me, I'm in so much pain right now." Rather than take both Plaintiff and Mr. Blackmon's complaints seriously, Defendant Julye began irately responding to Mr. Blackmon, in an apparent retaliation for the complaints.

30. On or around July 27, 2020, Mr. Blackmon called to complain about pain, to which a nurse responded, "There's a lot worse people off than you are right now. There's nothing wrong with [your] colon. Your family has no idea what they're talking about." Defendant Julye even wrote in her medical report that Mr. Blackmon's concerns about colon cancer should be ignored. Mr. Blackmon was again deliberately denied medical care and was instead treated with humiliation and demeaning behavior by Defendant Julye and other medical personnel at the prison.

31. On or around August 23, 2020, Mr. Blackmon called Plaintiff crying due to excruciating pain and bleeding from his rectum. Plaintiff called the Polunsky Unit to complain of her husband's care and spoke with Defendant Perisinger, who told Plaintiff that Mr. Blackmon had hemorrhoids. However, Mr. Blackmon's medical records confirmed that he did not have hemorrhoids.

32. Plaintiff stressed to Defendant Perisinger that Mr. Blackmon did not have hemorrhoids at that time, nor a history of hemorrhoids. Rather than listening to Plaintiff and trying

to provide medical treatment for Mr. Blackmon's worsening symptoms, Defendant Perisinger hung up on Plaintiff.

33. On another occasion, two officers and Defendant Jackson went to inspect Mr. Blackmon. Mr. Blackmon pulled down his pants and the nurse said, "I need to check your hemorrhoids." Again, Mr. Blackmon did not have hemorrhoids. Mr. Blackmon informed the nurse as much, saying he was bleeding from his rectum. Defendant Jackson gave Mr. Blackmon Pepto-Bismol and left. Defendant Jackson never followed up with Mr. Blackmon. At this time, his bowel movements had increased to twenty (20) per day combined with significant fecal bleeding.

34. All throughout this time, Mr. Blackmon made consistent sick call slips. In addition, Plaintiff began calling and writing to Defendant Dickerson. Plaintiff informed Defendant Dickerson of Mr. Blackmon's desperate need for medical treatment due to concerns over colon cancer.

35. On or around September 4, 2020, Mr. Blackmon was rushed to the emergency room for debilitating pain, where a computerized tomography ("CT") scan found that Mr. Blackmon's intestines were severely inflamed. Mr. Blackmon was recommended to see a gastroenterologist immediately. Up to this point, Mr. Blackmon had been deliberately denied the opportunity to see a gastroenterologist, though he was referred to one nearly two months prior. Mr. Blackmon was repeatedly told it would be his turn soon by employees of Defendants Polonsky Unit and UTMB, but was never called in to be seen by the specialist.

36. When Mr. Blackmon returned from the emergency room, he was placed in quarantine. Mr. Blackmon was not given his medication, though the doctor he had just seen had prescribed him medication to take. It took a full nineteen (19) days for Mr. Blackmon to receive his medication, which was received on or about September 23, 2020.

37. On September 17, 2020, Mr. Blackmon was finally given an examination by a gastroenterologist over a telehealth visit. At the examination, the doctor informed Mr. Blackmon that he needed a colonoscopy as soon as possible due to serious concerns about colon cancer. At a urology appointment on or around October 7, 2020, the doctor informed Mr. Blackmon that nothing was wrong with his prostate, that he did not have prostatitis, and confirmed that Mr. Blackmon needed a colonoscopy as soon as possible.

38. On or around October 8, 2020, Mr. Blackmon again requested for medical help due to an inability to stand because of the debilitating pain. Officers and Defendant Perisinger came to Mr. Blackmon's cell. Defendant Perisinger began berating him for placing a call for medical help. Defendant Perisinger wantonly cursed at Mr. Blackmon, admonishing him for his sick calls and told him to "get on the fucking gurney." Mr. Blackmon was transported to medical, where Defendant Jackson yelled at Mr. Blackmon and told him to "suck [your pain] up until your appointment."

39. Mr. Blackmon was not allowed an examination and was forced to leave medical. Defendant Jackson ignored his requests for medical attention and told Mr. Blackmon to take Pepto-Bismol, even though Mr. Blackmon was told by a different doctor not to take Pepto-Bismol. Defendant Jackson then threatened to write up Mr. Blackmon if he didn't take the medication. Rather than face discipline, Mr. Blackmon took the Pepto-Bismol and left medical.

40. On or around October 13, 2020, Mr. Blackmon was found in his cell covered in blood and unable to move. Mr. Blackmon was rushed to St. Luke's Health-Memorial Livingston ("St. Luke's") where a CT scan revealed a tumor on his rectum.. Finally, after over eight months of suffering through the same symptoms, twenty-three (23) sick call slips, eighteen (18) letters by Plaintiff, Mr. Blackmon was finally official diagnosed with colon cancer by the hospital and given

the care he so desperately requested and required. However, the delay in treatment led to the presence of the cancer on his liver, and in his lymph nodes, indicating that he was unlikely to survive the cancer.

41. While at St. Luke's he received morphine and other medication to help ease his pain and alleviate some of his symptoms. But due to the spread of the cancer, Mr. Blackmon needed to begin treatment with a certain type of chemotherapy medication that presents a risk of cardiac arrest.

42. On November 2, 2020, Mr. Blackmon was scheduled to begin the chemotherapy, and spend forty-eight hours on the medication. Unfortunately, on November 3, 2020, Mr. Blackmon suddenly went into cardiac arrest due to complications from the chemotherapy treatment. Mr. Blackmon subsequently died of the cardiac arrest on the same day.

43. If the Defendants adequately responded to Mr. Blackmon's serious requests for medical care when they first arose, or even when he was first referred to see a gastroenterologist, then the recommended treatment would have been to remove the cancerous growth from Mr. Blackmon's rectum. In fact, it was only the deliberate indifference to Mr. Blackmon's serious health issues and the delay of medical treatment that allowed the cancer to spread, thus requiring the use of the chemotherapy. As a result, Defendants' deliberate indifference to Plaintiff's basic medical needs was the only reason behind the use of the chemotherapy that ended Mr. Blackmon's life.

44. Mr. Black was forty-two (42) years old when he was died because of the Defendants deliberate indifference.

45. Plaintiff, as the surviving spouse of Mr. Blackmon, consistently tried to get him the medical care he needed and tried to have Defendants take Mr. Blackmon's concerns seriously.

46. Plaintiff's struggle to get Defendants to care about Mr. Blackmon's life and wellbeing has deeply affected her emotionally and caused extensive suffering.

47. Plaintiff has also suffered substantially from the death of her husband by virtue of the destruction of the marital relationship, including the right to love, affection, solace, comfort, companionship, society, emotional support, and happiness. Plaintiff will continue to suffer anguish, grief, and sorrow because of Mr. Blackmon's death and is likely to continue to suffer for a significant period of time.

**AND AS FOR A FIRST CAUSE OF ACTION FOR A VIOLATION OF**
**42 U.S.C. § 1983, Civil Action for Deprivation of Rights**
**(Denial of Basic Human Needs – Medical Care)**
**(As to Defendants Julye, Perisinger, Jackson, Dickerson, and UTMB)**

48. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

49. The conduct alleged herein deprived Plaintiff, on behalf of Mr. Blackmon, of rights and privileges secured and protected by the United States Constitution and the laws of the United States, namely the Eighth Amendment right to be free from punishment and the right to medical care.

50. Defendants, through their episodic acts or omissions, deliberately refused to treat Mr. Miller, ignored his serious medical complaints, delayed emergency medical treatment, and evinced a wanton disregard for Mr. Blackmon's serious medical needs that violated Mr. Blackmon's clearly established constitutional rights.

51. A government official violates an inmates' Eighth Amendment right to medical care when the officials acts with deliberate indifference to a inmates' serious medical needs. Officials act with deliberate indifference to serious medical needs when (i) the officials are aware

of underlying facts indicating a substantial risk of serious harm exists and (ii) the officials must also draw the inference.

52. Deliberate indifference to serious medical needs can be established by the refusal to treat a inmate, ignoring medical complaints, intentionally incorrect medical treatment, or any similar conduct that would clearly evince a wanton disregard for any medical needs. Further, the denial of recommended medical treatment is often sufficient to show deliberate indifference, or sufficient exceptional circumstances evincing such a disregard for the inmates' basic medical needs.

53. Defendants had actual knowledge that Mr. Blackmon was experiencing significant medical symptoms, and were on notice that Mr. Blackmon likely had colon cancer. Defendants were aware of the substantial risk of serious harm that result from untreated colon cancer, but failed to treat Mr. Blackmon and ignored his medical complaints, and Plaintiff's requests that Mr. Blackmon receive medical treatment.

54. Defendants also had actual knowledge of Mr. Blackmon's complaints of significant pain, serious bleeding from his rectum, blood in his feces, and serious bowel issues. Defendants were also aware of the substantial risk of serious harm that results from untreated symptoms; but failed to treat Mr. Blackmon, ignored his medical complaints, and delayed immediate medical treatment.

55. The Defendants' denial of medical care, delay of appropriate medical testing, and delay of emergency medical treatment deprived Mr. Blackmon of his basic human need of medical care and allowed the colon cancer to spread throughout Mr. Blackmon's body. As a result, Mr. Black suffered extreme pain and suffering, and was ultimately forced to receive a chemotherapy treatment that led to Mr. Blackmon's death.

13
PLAINTIFF'S ORIGINAL COMPLAINT

56. Defendants also acted with evil motive or intent and/or reckless and callous indifference to Mr. Blackmon's Eighth Amendment rights, entitling Plaintiff to punitive damages.

57. Plaintiff's requests for relief are set forth below.

## AND AS FOR A SECOND CAUSE OF ACTION FOR A VIOLATION OF
### 42 U.S.C. § 1983, Civil Action for Deprivation of Rights
### (Wrongful Death)
### (As to All Defendants except for Defendant Polonsky Unit)

58. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

59. Defendants' previously established violations of Mr. Blackmon's constitutional rights led to Mr. Blackmon's eventual death due to violations forcing Mr. Blackmon to receive the chemotherapy with a risk of cardiac arrest.

60. Defendants' constitutional violations more likely than not led to Mr. Miller's death due to cardiac arrest.

61. Plaintiff's requests for relief are set forth below.

## AND AS FOR A THIRD CAUSE OF ACTION FOR A VIOLATION OF
### Tex. Civ. Prac. & Rem. Code § 71.004
### (Wrongful Death)
### (As to All Defendants)

62. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

63. Defendants' previously established violations of Mr. Blackmon's constitutional rights led to Mr. Blackmon's eventual death due to violations forcing Mr. Blackmon to receive the chemotherapy with a risk of cardiac arrest.

64. Defendants' constitutional violations more likely than not led to Mr. Miller's death due to cardiac arrest.

65. Plaintiff's requests for relief are set forth below.

## PRAYER FOR RELIEF

Plaintiff respectfully requests judgment against Defendants as follows:

A. Declaring that the practices complained of herein are unlawful and in violation of the rights of the Plaintiff under the U.S. Const. and 42 U.S.C. § 1983;

B. Awarding all damages which Plaintiff has sustained as a result of Defendants' conduct, including for physical injuries, medical bills, emotional distress, and anguish;

C. Pre-judgment and post-judgment interest, as provided by law;

D. Awarding Plaintiff punitive damages in an amount commensurate with Defendants' ability and so as to deter future malicious, oppressive, and/or malicious conduct;

E. Granting Plaintiff reasonable and necessary attorneys' fees and expenses which Plaintiff has incurred and will continue to incur during all trial and appellate court proceedings pursuant to 42 U.S.C. § 1988;

F. Awarding Plaintiff, as the representative of the Estate of Mr. Blackmon, damages for conscious pain and mental anguish prior to Mr. Blackmon's Death, funeral and burial expenses, and exemplary damages;

G. Awarding Plaintiff, as wrongful death beneficiary of Mr. Blackmon, damages for mental anguish, loss of companionship and society, and pecuniary loss.

H. That the Court retain jurisdiction over Defendants until such time as it is satisfied that they have remedied the practices complained of and are determined to be in full compliance with the law; and

I. Awarding Plaintiff such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable.

Plaintiff also seeks injunctive relief, including, but not limited to:

A. Supervisory discipline up to and including termination for any agent of Defendants' medical personnel who improperly handle inmates' requests for medical care;

B. Supervisory discipline up to and including termination for medical personnel including Defendant Perisinger, Defendant Jackson, or any other agent of the listed Defendants who were involved in the incidents described herein;

C. Monitoring by the Court or a federal agency to ensure that Defendants comply with all injunctive relief.

Plaintiff further demands that she be awarded such other and further legal and equitable relief as may be found appropriate or as the Court may deem just or equitable

Dated: November 3, 2022                  Respectfully submitted,

*/s/David W. Henderson*
David W. Henderson
Texas State Bar No. 24032292
dhenderson@equalrights.law
Jay D. Ellwanger
Texas State Bar No. 24036522
jellwanger@equalrights.law
J. Sebastian Van Coevorden
Texas State Bar No. 24128101
svancoevorden@equalrights.law
**Ellwanger Law LLLP**
400 S Zang Blvd, Suite 600
Dallas, Texas 75208
Telephone: (214) 948-3334
Facsimile: (214) 853-9410

**COUNSEL FOR PLAINTIFF**