IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| DANA BLACKMON as surviving spouse and Representative of the Estate of JACOB BLACKMON, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO.  9:22-CV-182-MJT-CLS |
| TEXAS DEPARTMENT OF CRIMINAL JUSTICE ALLAN B. POLONSKY UNIT, UTMB CORRECTIONAL MANAGED CARE, DANIEL DICKERSON, APRIL PERISINGER, TERESA JACKSON, and DR. ERNESTINE JULYE, | § § § § § § § | |
| Defendants. | § | |

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS (Docs. #7, 8, 17, 34) AND ORDER FOR ADDITIONAL BRIEFING

Pursuant to 28 U.S.C. § 636 and the Local Rules of Court for the Assignment of Duties to United States Magistrate Judges, the district court referred this proceeding to the undersigned United States magistrate judge to conduct all pretrial proceedings, to enter findings of fact and recommend disposition on case-dispositive matters, and to determine non-dispositive matters. *See* 28 U.S.C. § 636(b)(1); E.D. TEX. LOCAL R. CV-72.

Pending before the court are the following: (1) Defendants UTMB Correctional Managed Care and Dr. Enerstine Julye's Motion to Dismiss (doc. #7); (2) Defendants Texas Department of Criminal Justice: Allan B. Polonsky Unit and Daniel Dickerson's Motion to Dismiss (doc. #8); (3) Defendant April Perisinger's Motion to Dismiss (doc. #17); and (4) Defendant Teresa Jackson's Motion to Dismiss (doc. #34).  After review, each motion is granted in part and denied in part, and the issue of sovereign immunity as to UTMB Correctional Managed Care will be determined later in accordance with the undersigned's briefing order.

## I.    Procedural History and Plaintiff's Claims

### A.    Claims and Parties

Plaintiff Dana Blackmon filed suit on November 3, 2022 (doc. #1), alleging that, on November 3, 2020, her spouse Jacob Blackmon ("Blackmon") died while in custody of the Texas Department of Criminal Justice at the Allan B. Polunsky Unit.  (Doc. #1 at ¶ 1.)  Plaintiff alleges Blackmon's death resulted from Defendants' deliberate denial of medical treatment for colon cancer.  (Doc. #1 at ¶ 1.)  Plaintiff brings suit against Defendants as Blackmon's surviving spouse and on behalf of Blackmon's estate, asserting three distinct claims under 42 U.S.C. § 1983:[1] (1) a claim under 42 U.S.C. § 1983 for violating Blackmon's Eighth Amendment right to medical care [hereinafter "Eighth Amendment Claim"]; (2) a claim under 42 U.S.C. § 1983 for wrongful death brought individually by Plaintiff [hereinafter "Wrongful Death Individual Claim"]; and (3) a claim under 42 U.S.C. § 1983 for wrongful death brought in a representative capacity on Blackmon's behalf [hereinafter "Wrongful Death Representative Claim"].[2]   (Doc. #1.)

Defendants include the following as alleged by Plaintiff: (1) Texas Department of Criminal Justice: Allan B. Polunsky Unit ("Polunsky Unit"), a state incarceration facility located in Polk County, Texas; (2) UTMB Correctional Managed Care ("UTMB-CMC"), a healthcare entity that oversees and provides healthcare services to individuals incarcerated in the Polunsky Unit; (3) Daniel Dickerson ("Dickerson"), warden of the Polunsky Unit; (4) April Perisinger ("Perisinger"),

---

[1] As is discussed more fully *infra* note 13 and § IV.A.1.i-ii, all three of Plaintiff's 42 U.S.C. § 1983 claims are Eighth Amendment claims.  The distinctions between these claims are the nature of the different injuries and/or whether the claim is brought in an individual or representative capacity.

[2] These three claims reflect two modifications from Plaintiff's original complaint.  First, Plaintiff originally asserted an additional claim under section 71.004 of the Texas Civil Practice and Remedy Code for wrongful death.  (Doc. #1 at ¶¶ 62-65.)  However, Plaintiff stated on the record at the June 6, 2023, hearing that Plaintiff no longer wishes to pursue this claim.  Second, Plaintiff clarified at the hearing that Plaintiff is asserting *both* an individual and a representative claim for wrongful death brought under 42 U.S.C. § 1983.  Plaintiff's original complaint did not make clear whether she was asserting this claim in her representative capacity.  (Doc. # 1 at ¶¶ 58-61.)

a nurse employed by UTMB-CMC who operates at the Polunsky Unit; (5) Teresa Jackson, a nurse employed by UTMB-CMC who operates at the Polunsky Unit; and (6) Dr. Ernestine Julye ("Julye"), a doctor employed by UTMB-CMC who operates at the Polunsky Unit.  (Doc. #1 at ¶¶ 7-12.)  Plaintiff asserts the three § 1983 claims against Defendants UTMB-CMC, Dickerson, Perisinger, Jackson, and Julye.  (Doc. #1 at ¶¶ 48-61.)

Although Plaintiff named the Polunsky Unit as a defendant in this suit, the only cause of action alleged against the Polunsky Unit was the now-dropped state law claim under section 71.004 of the Texas Civil Practice and Remedy Code (doc. #1 at ¶¶ 48, 58, 62).  *See supra* note 2.  Thus, as Plaintiff no longer alleges any cause of action against the Polunsky Unit, the undersigned recommends that the district court enter an order dismissing "TDCJ: Polunsky Unit" from this suit.

### B.  Plaintiff's Factual Allegations

In her statement of facts, Plaintiff alleges that Blackmon was incarcerated in the Polunsky Unit from January 12, 1994, until his death on November 3, 2020.  (Doc. #1 at ¶ 13.)  According to Plaintiff, Blackmon first reported to officials in the Polunsky Unit that he had significant abdominal pain, the first symptom he experienced related to his colon cancer, in February 2020.  (Doc. #1 at ¶ 14.)  The Polunsky Unit officials did not provide Blackmon with any treatment in response to Blackmon's complaints of abdominal pain, and UTMB-CMC did not conduct any medical evaluation on Blackmon at this time, believing the pain was caused by new medications Blackmon was taking.  (Doc. #1 at ¶ 15.)  From February 2020 to May 2020, Blackmon's abdominal pain increased, and he began complaining of pain in his rectum along with intermittent diarrhea and constipation.  (Doc. #1 at ¶¶ 16, 18.)  During this time, Blackmon made multiple requests for medical treatment due to these symptoms by filing "sick call slips," the Polunsky Unit's system for imprisoned individuals to make official and recorded requests for medical

treatment from Polunsky Unit employees and UTMB-CMC, which were all ignored.  (Doc. #1 at ¶¶ 17, 18.)

On or around June 10, 2020, Reginald Wallace, a physician's assistant employed at UTMB CMC, saw Blackmon, during which time Blackmon informed Wallace of his symptoms and requested as many tests as possible.  (Doc. #1 at ¶ 19.)  Wallace tested Blackmon's urine and feces to determine the presence of a bacterial infection or other medical issues.  (Doc. # 1 at ¶ 19.)  Blackmon waited several weeks, but he was never informed of the test results.  (Doc. #1 at ¶ 19.)  During this time, Blackmon continued to experience severe pain and significant gastrointestinal symptoms, which had escalated to include rectal bleeding, and filed numerous sick call slips informing UTMB-CMC and the Polunsky Unit of his symptoms and requesting immediate medical attention; however, Blackmon received no response from UTMB-CMC or the Polunsky Unit.  (Doc. #1 at ¶ 20.)  Blackmon also informed Plaintiff, his spouse, of his symptoms and the lack of response from Defendants.  (Doc. #1 at ¶ 21.)

On June 30, 2020, the results of Wallace's tests showed a negative result for the presence of a bacterial infection, but a positive fecal immunochemical ("FIT") result for the presence of blood in his feces—an indication of colon cancer.  (Doc. #1 at ¶ 22.)  As a result, Paul Reilley, a physician's assistant employed at UTMB-CMC, filled out a health service referral request on July 2, 2020, requesting that Blackmon receive an expedited referral to a gastroenterologist for colon cancer screening.  (Doc. #1 at ¶ 23.)  Despite the expedited request, however, Blackmon was not taken to see a gastroenterologist for colon cancer screening; rather, Blackmon was taken to see Defendant Julye, a doctor employed by UTMB-CMC at the Polunsky Unit.  (Doc. #1 at ¶ 24.)  Julye evaluated Blackmon, and her examination of Blackmon confirmed that he had a bump at or around his colon.  (Doc. #1 at ¶ 25.)  Despite the bump and Blackmon's test results, Julye

determined that Blackmon had a "bacterial infection and diagnosed him with prostatitis. (Doc. #1 at ¶ 25.)  Additionally, throughout the exam, Julye "verbally and wantonly ridiculed" Blackmon for his belief that he had colon cancer and that his symptoms were serious. (Doc. #1 at ¶ 26.) Julye did not exam Blackmon's colon or try to determine why he was experiencing such pain in that area, despite his positive FIT test result. (Doc. #1 at ¶ 26.). Defendants note that during this time Texas experienced what was then an all-time high of COVID-19 patient hospitalizations. (Doc. #7 at 6 n.4.)

Following Julye's exam, Blackmon's symptoms worsened as he experienced "significantly more pain, blood in his feces, and was having between twelve (12) and fifteen (15) bowel movements per day," during which time Plaintiff began calling and writing letters to the Polunsky Unit and UTMB-CMC employees in an attempt for Blackmon to receive appropriate care. (Doc. #1 at ¶ 27.)  Despite his worsening symptoms, Julye reiterated to Plaintiff that "nothing was wrong with her husband's colon, and that Blackmon's concerns about colon cancer were not serious." (Doc. #1 at ¶ 28.)  In the meantime, Blackmon continued filing sick call slips, to which Julye began "irately responding . . . in an apparent retaliation for the complaints."  (Doc. #1 at ¶ 29.) Specifically, on or around July 27, 2020, when Blackmon called to complain about his pain, a nurse responded, "There's a lot worse people off than you are right now. There's nothing wrong with [your] colon. Your family has no idea what they're talking about," and Julye wrote in her medical report that Blackmon's concerns about colon cancer should be ignored. (Doc. #1 at ¶ 30.)

On or around August 23, 2020, after Blackmon called Plaintiff crying due to excruciating pain and rectal bleeding, Plaintiff called the Polunsky Unit to complain about her husband's care and spoke with Defendant Perisinger, who told Plaintiff that Blackmon had hemorrhoids, despite his medical records confirming that he did not. (Doc. #1 at ¶¶ 31-32.)  Perisinger then hung up on

Plaintiff.  (Doc. #1 a ¶ 32.)  On another occasion, two Polunsky Unit officers and Defendant Jackson went to inspect Blackmon's "hemorrhoids," and Blackmon informed Jackson that he was experiencing rectal bleeding, not hemorrhoids.  (Doc. #1 at ¶ 33.)  Jackson gave Blackmon Pepto-Bismol, left, and never followed up with him, even though Blackmon's bowel movements had increased to twenty per day accompanied by significant fecal bleeding at the time.  (Doc. #1 at ¶ 33.)  Blackmon continued to file sick call slips during this time, and Plaintiff began calling and writing to Defendant Dickerson, informing him of Blackmon's need for medical treatment and the concerns about colon cancer.  (Doc. #1 at ¶ 34.)

Blackmon was examined by a gastroenterologist for the first time on September 17, 2020, via telehealth, and the gastroenterologist informed Blackmon that he needed a colonoscopy as soon as possible due to serious concerns about colon cancer.  (Doc. #1 at ¶ 37.)  On or around October 7, 2020, a urologist informed Blackmon that he did not have prostatitis, nothing was wrong with his prostate, and he needed a colonoscopy as soon as possible.  (Doc. #1 at ¶ 37.)  On or around October 8, 2020, Blackmon, unable to stand due to debilitating pain, called for medical help, and Polunsky Unit officers and Defendant Perisinger came to Blackmon's cell and berated him for placing a call, cursing at him, admonishing him for his sick call slips, and telling him to "get on the fucking gurney."  (Doc. #1 at ¶ 38.)  Blackmon was then transported to medical, where Defendant Jackson yelled at Blackmon and told him to "suck [your pain] up until your appointment."  (Doc. #1 at ¶ 38.)  Blackmon was not examined; instead, Defendant Jackson ignored his requests for medical attention, told Blackmon to take Pepto-Bismol (even though Blackmon had been told by a different doctor not to do so), and threatened to write him up if he did not take the medication.  (Doc. #1 at ¶ 39.)  Rather than face discipline, Blackmon took the Pepto-Bismol and left medical as instructed.  (Doc. #1 at ¶ 39.)

6

On or around October 13, 2020, Blackmon was rushed to St. Luke's Health-Memorial Livingston ("St. Luke's") after he was found in his cell covered in blood and unable to move. (Doc. #1 at ¶ 40.) There, a CT scan revealed a tumor on his rectum, and he was officially diagnosed with late-stage colon cancer that had spread to his liver and lymph nodes. (Doc. #1 at ¶ 40.) While at St. Luke's, he received medication to help alleviate his pain and some of his symptoms, but, due to the spread of his cancer, Blackmon needed to begin treatment with a certain type of chemotherapy medication that presents a risk of cardiac arrest. (Doc. #1 at ¶ 41.) Blackmon was scheduled to begin chemotherapy on November 2, 2023, and spend forty-eight hours on the medication. (Doc. #1 at ¶ 42.) On November 3, 2020, Blackmon went into sudden cardiac arrest due to complications from the chemotherapy treatment and subsequently died that same day. (Doc. #1 at ¶ 42.)

Plaintiff alleges that, if Defendants had adequately responded to Blackmon's requests for medical care when they first arose, or even when he was first referred to a gastroenterologist, then his cancer would not have been as advanced, and the recommended treatment would have been to remove the cancerous growth from his rectum. (Doc. #1 at ¶ 43.) Due to Defendants' deliberate indifference to Blackmon's serious health issues, however, Blackmon's medical treatment was delayed, allowing his cancer to spread and requiring the use of the chemotherapy treatment that ultimately caused his death from cardiac arrest. (Doc. #1 at ¶ 43.) Thus, Plaintiff alleges that Defendants' deliberate indifference to Blackmon's basic medical needs was the only reason behind the use of the chemotherapy treatment that ended his life at the age of 42. (Doc. #1 at ¶ 43.)

C.  Defendants' Motions to Dismiss

Defendants have each filed Motions to Dismiss (docs. #7, 8, 17, 34) on various grounds, including that they are entitled to qualified immunity and/or sovereign immunity, that the statute

of limitations has run on each of Plaintiff's causes of action, and that the complaint fails to state a claim upon which relief can be granted. Plaintiff responded to each motion (docs. #15, 16, 32, 37); Defendants each replied (docs. #21, 23, 33, 38), and Plaintiff filed sur-replies (docs. #29, 31, 35, 39). The court held a hearing on these motions on June 6, 2023. The undersigned addresses each Motion to Dismiss in turn.

## II.    Legal Standard

### A.  12(b)(1)

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief. *Ruiz v. Donahue*, 569 F. App'x 207, 210 (5th Cir. 2014) (per curiam) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2002)). In considering a motion to dismiss, the court must accept as true the allegations and facts set forth in the complaint and may consider matters of fact which may be in dispute. *Id.*

Generally, the burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Ramming*, 281 F.3d at 161 (citations omitted). However, here, the 12(b)(1) challenge is Defendant UTMB-CMC's assertion of sovereign immunity, and the Fifth Circuit has held that the entity asserting sovereign immunity bears the burden of demonstrating such immunity. *Cutrer v. Tarrant Cnty. Local Workforce Dev. Bd.*, 943 F.3d 265, 270 (5th Cir. 2019) (citation omitted) ("[A]n entity that asserts sovereign immunity under *Clark* bears the burden of demonstrating that it's an 'arm of the state.'"); *see also, e.g.*, *Skelton v. Camp*, 234 F.3d 292, 297 (5th Cir. 2000) (collecting cases); *but see, e.g.*, *Canada Hockey, L.L.C. v. Tex. A&M Univ. Athletic Dep't*, No. 20-20503, 2022 WL 445172, at *2 (5th Cir. Feb. 14, 2022) (applying the general rule

that the party asserting jurisdiction bears the burden of proof that jurisdiction exists, demonstrating an apparent contradiction[3] in Fifth Circuit cases on this matter).

If a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the jurisdictional attack under Rule 12(b)(1) before addressing any attack on the legal merits. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.), *cert. denied* 536 U.S. 960 (2002)(citations omitted); *see also Goudy-Bachman v. United States Dep't of Health and Human Svcs.*, 764 F. Supp. 2d 684, 689 (M.D. Pa. 2011) (citing *Tolan v. United States*, 176 F.R.D. 507, 509 (E.D. Pa. 1998) ("[w]hen a motion is premised on both lack of subject matter jurisdiction and another Rule 12(b) ground, mootness concerns dictate that the court address the issue of jurisdiction first.")); *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (citations omitted) ("A [motion to dismiss] for lack of subject matter jurisdiction must be considered . . . before other challenge 'since the court must find jurisdiction before determining the validity of a claim.'")

When considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Bryan v. Stevens,* 169 F. Supp. 2d 676, 681 (S.D. Tex. 2001) (citing *Den Norske Stats Oljeselskap As v. Heeremac Vof*, 241 F.2d 420, 424 (5th Cir. 2001)); *see also Carroll v. Abide*, 788 F.3d 502, 504 (5th Cir. 2015). A motion to dismiss based on the

---

[3] The undersigned will apply the Fifth Circuit caselaw holding that the party asserting it is entitled to sovereign immunity bears the burden of demonstrating as such for two reasons. First, the Fifth Circuit's Rule of Orderliness dictates that *Skelton* controls. *See, e.g.*, *Harvey v. Black*, 913 F.2d 226, 228 n.2 (5th Cir. 1990) ("When two panel opinions appear in conflict, it is the earlier which controls."). Second, the reasoning proffered by courts that have substantively considered this issue is persuasive, and those courts (cited by *Skelton*) have held the burden is on the entity asserting sovereign immunity. *See, e.g.*, *ITSI T.V. Prods., Inc. v. Agric. Ass'n*, 3 F.3d 1289, 1291-92 (9th Cir. 1993). In contrast, the Fifth Circuit cases that have contradicted *Skelton* do not contain any substantive consideration of this issue and instead simply state the general rule without further discussion or acknowledgment of its own prior caselaw.

complaint alone presents a "facial attack," and requires the trial court "merely to look to the sufficiency of the allegations in the complaint because they are presumed be true." *Bridges v. Freese*, 122 F. Supp. 3d 538, 542 (S.D. Miss. 2015) (quoting *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)).  In contrast, a "factual" attack challenges the existence of subject matter in fact, irrespective of the pleadings, and matters outside pleadings, such as testimony and affidavits, are considered.  *Id.* (quoting *Menchacha v. Chrysler Credit Corp.*, 613 F.2d 661, 663 (5th Cir. 1980)).

    B.  <u>12(b)(6)</u>

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint must contain sufficient facts, which accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To be plausible, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Great Lakes Dredge & Dock Co. LLC v. Louisiana*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly,* 550 U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Rule 12(b)(6) must be read in tandem with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *see also Iqbal*, 556 U.S. at 677-78; *Twombly,* 550 U.S. at 555.  To decide whether the complaint states a valid claim for relief, the court accepts all well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Great Lakes Dredge,* 624 F.3d at 210.  However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal

conclusions." *Id.* (quoting *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).)  "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal,* 556 U.S. at 679.  The inquiry focuses on the allegations in the pleadings and not on whether the plaintiff has sufficient evidence to succeed on the merits.  *Ackerson v. Bean Dredging*, *LLC*, 589 F.3d 196, 209 (5th Cir. 2009).

### III.    Discussion: Defendant UTMB-CMC's Rule 12(b)(1) Challenge

The undersigned first considers Defendant UTMB-CMC's jurisdictional challenge under Rule 12(b)(1).[4]  Defendant UTMB-CMC seeks dismissal of all of Plaintiff's claims against it on the ground that it is entitled to sovereign immunity.  (Doc. #7 at 2.)

It is important to note that, although Plaintiff refers to Defendant UTMB as "UTMB" in her complaint as shorthand, Plaintiff contends that she is suing "UTMB Correctional Managed Care" as a specific entity that is distinct, for the purposes of liability under the asserted causes of action, from the University of Texas Medical Branch.  To clarify this distinction, Plaintiff refers to this defendant as "CMC" in later pleadings.  Plaintiff does not dispute that the University of Texas Medical Branch is an arm of the state and entitled to sovereign immunity; however, Plaintiff argues that UTMB Correctional Managed Care—the entity that Plaintiff is suing—is not an arm of the state and, therefore, is not entitled to sovereign immunity.

In her complaint, Plaintiff describes Defendant UTMB-CMC as follows: "UTMB Correctional Managed Care is a healthcare entity that oversees and provides healthcare services to individuals imprisoned in Defendant Polonsky Unit.  UTMB is[sic] establishes and supervises the medical treatment, inmate health services, and overall healthcare operations in coordination with

---

[4] If the undersigned determines that Defendants UTMB-CMC is an arm of the state under the *Clark* factors who is entitled to sovereign immunity, the undersigned would lack jurisdiction to resolve their additional 12(b)(6) challenges. *See, e.g., Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (citations omitted) (observing that "the court must find jurisdiction before determining the validity of a claim" on the merits).

[Defendant TDCJ's Polunsky Unit]." (Doc. #1 at ¶ 8.) Plaintiff additionally writes in her complaint that Defendant UTMB-CMC operates under the University of Texas (UT) system and contracts with Defendant TDCJ to provide healthcare services to incarcerated individuals. (Doc. #15 at 23.) Most significantly, Plaintiff argues that an analysis of the *Clark* factors, articulated in *Clark v. Tarrant County*, 798 F.2d 736 (5th Cir. 1986), demonstrates that Defendant UTMB-CMC is not an arm of the state and is therefore not entitled to sovereign immunity.

Plaintiff's argument that Defendant UTMB-CMC is not an arm of the state (notwithstanding whether University of Texas Medical Branch is an arm of the state[5]) appears to be an issue of first impression in this circuit. The undersigned is not aware of any case law that has determined, through an analysis of the *Clark* factors, whether this is an entity separate[6] from the University of Texas Medical Branch and, if so, whether it is an arm of the state (nor have the parties cited to any). Although Defendant UTMB-CMC contends that the answer is obvious, the Fifth Circuit has made clear that, in order to make a proper finding as to whether an entity is entitled to sovereign immunity as an arm of the state, courts must engage in an analysis of the

---

[5] University of Texas Medical Branch is part of the UT public university system, which is itself considered a state agency. *See, e.g.*, *Daniel v. Univ. of Tex. Southwestern Med. Ctr.*, 960 F.3d 253, 257 (5th Cir. 2020) ("UTSMC is part of the UT System. . . . A public university system is considered a state agency."). The Fifth Circuit has held that "public universities are entitled to sovereign immunity as arms of the state." *Id.* (citation omitted).

[6] Defendant UTMB-CMC did not allege in its Motion to Dismiss (doc. #7) that it is a non-jural entity lacking the capacity to be sued. Defendant UTMB-CMC made such an argument, for the first time, in its reply. The undersigned need not consider arguments raised for the first time in a reply. *See, e.g.*, *Tran Enters., L.L.C. v. DHL Express (USA) Inc.*, 627 F.3d 1004, 1010 (5th Cir. 2010); *Melton v. Waxahachie Police Dep't*, No. 3:21-CV-2854-K-BH, 2022 WL 3636616, at *13 (N.D. Tex. Aug. 8, 2022) (citations omitted). As such, the undersigned will not consider or address this argument in this report. Moreover, a motion to dismiss on the ground that a defendant is not a jural entity capable of being sued is raised under Rule 12(b)(6) rather than 12(b)(1). *Kibbey v. Collin Cnty. Det. Facility*, No. 4:21-CV-799-SDJ-CAN, 2023 WL 2305970, at *1 n.1 (E.D. Tex. Feb. 6, 2023) (stating that a 12(b)(6) motion is the "proper mechanism for dismissal of an action against a non-jural entity" and collecting cases) (citations omitted). If Defendant UTMB-CMC is ultimately denied sovereign immunity and wishes to argue for dismissal on the ground that it is a non-jural entity, it may do so in a separate motion to dismiss filed in accordance with the court's scheduling order (all deadlines, including the dispositive motion deadline, are currently stayed). (Docs. #27, 36.)

*Clark* factors.[7]  *See, e.g.*, *Springboards to Educ., Inc. v. McAllen Indep. Sch. Dist.*, 62 F.4th 174, 178 (5th Cir. 2023) ("In determining whether an entity is an arm of the state, we balance the so-called '*Clark* factors'. . . ."); *see also Southwestern Bell Tel. Co. v. City of El Paso*, 243 F.3d 936, 939 (5th Cir. 2001) (discussing "the arm-of-the-state analysis *required* to determine whether an entity is entitled to Eleventh Amendment immunity") (emphasis added); *Vogt v. Bd. of Comm'rs*, 294 F.3d 684, 691-92 (5th Cir. 2002) (explaining that an entity's status as an agency or creature of the state is not determinative of the Eleventh Amendment question because many "creatures or agencies" of the state are not "arms of the state" for purposes of Eleventh Amendment immunity, thus requiring an analysis, using the *Clark* factors, to "examine the particular entity . . . and its powers and characteristics as created by state law to determine whether the suit is in reality a suit against the state itself").

The *Clark* factors are as follows: "(1) whether state statutes and case law view the entity as an arm of the state; (2) the source of the entity's funding; (3) the entity's degree of local autonomy; (4) whether the entity is concerned primarily with local, as opposed to statewide, problems; (5) whether the entity has the authority to sue and be sued in its own name; and (6) whether it has the right to hold and use property." *Springboards*, 62 F.4th at 178-79 (citing *Clark*, 798 F.2d at 744-45).  Factors five and six are of lesser importance, and the second factor on funding carries the most weight; however, no single factor is dispositive, and courts must consider the factors "as a whole."  *Id.* at 179 (citations omitted).

In its response, Plaintiff conducted a purported analysis of the *Clark* factors with respect to Defendant UTMB-CMC.  (Doc. #15 at 15-19.)  In doing so, Plaintiff cites to numerous sources

---

[7] A court could also satisfy this requirement by citing to an opinion that properly engages in the *Clark* factors analysis of the same entity.  Despite extensive research, the undersigned is not aware of any opinion that has analyzed whether UTMB-CMC is an arm of the state under the *Clark* factors.

for information not included within the four corners of her complaint[8] (doc. #1), such as the UTMB Correctional Managed Care and TDCJ Correctional Managed Care webpages, where certain publicly available information on this entity can be located. Defendant UTMB-CMC, in its reply, merely asks the court to "direct [its] attention to the Fifth Circuit's *Daniel* opinion" (doc. #21 at 5), which held that the University of Texas Southwestern Medical Center (UTSMC) is an arm of the state through an analysis of the *Clark* factors. *Daniel*, 960 F.3d at 256-60. Defendant UTMB-CMC contends that "the detailed opinion is almost entirely on point in all six factors" but does not offer an analysis of the *Clark* factors as they relate to Defendant UTMB-CMC. Recently, Defendant UTMB-CMC filed a notice requesting that the court take judicial notice of certain information related to job postings on the University of Texas Medical Branch website. (Doc. #45.)

It is clear to the undersigned that factual information is necessary to determine whether Defendant UTMB-CMC is an entity separate from UTMB and, if so, is an arm of the state under the *Clark* factors. For example, detailed information regarding the Defendant UTMB-CMC's funding is necessary. *See, e.g.*, *Springboards*, 62 F.4th at 179-81 (discussing the intricacies of the second *Clark* factor on funding). This type of detailed information is not included in Plaintiff's complaint (doc. #1), nor has the Defendant, who bears the burden of proof, sufficiently or properly submitted such information to the court in its briefing on this Motion to Dismiss (doc. #7).

Accordingly, the undersigned concludes that the issue of whether Defendant UTMB-CMC is an entity entitled to sovereign immunity as an arm of the state under the *Clark* factors cannot be resolved through the pending Motion to Dismiss. A summary judgment motion is necessary.

---

[8] Many of Plaintiff's citations to these sources are in the form of hyperlinks. Pursuant to Local Rule CV-10(e), "a hyperlink, or any site to which it refers, will not be considered part of the record."

However, before the undersigned orders briefing on the issue of sovereign immunity, one matter must be addressed first.

Even if the undersigned determines, on a motion for summary judgment, that Defendant UTMB-CMC is not an arm of the state entitled to sovereign immunity, Plaintiff's current pleading does not contain a viable constitutional claim against Defendant UTMB-CMC.  All three causes of action alleged against Defendant UTMB-CMC are constitutional claims brought under 42 U.S.C. § 1983.  A government[9] entity that can be sued for constitutional violations under 42 U.S.C. § 1983 can *only* be liable if it has a policy or custom that was the moving force behind the alleged constitutional violations—otherwise known as *Monell* liability.  *Eltalawy v. Lubbock Indep. Sch. Dist.*, 816 Fed. App'x 958, 962 (5th Cir. 2020) (quoting *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 865 (5th Cir. 2012)).  A government entity *cannot* be liable for constitutional violations under a theory of *respondeat superior* or vicarious liability.

Plaintiff's complaint does not currently plead a *Monell* claim against Defendant UTMB-CMC.  Plaintiff has, however, requested leave to file an amended complaint (doc. #7 at 33), which should be freely given unless there is substantial reason to deny such leave.  *See, e.g.*, *Mailing & Shipping Sys. v. Neopost U.S.A., Inc*, 292 F.R.D. 369, 376 (W.D. Tex. 2013) (citations omitted).[10] The undersigned finds that Plaintiff should be afforded an opportunity to amend her complaint plead a *Monell* claim against Defendant UTMB-CMC.

---

[9] Even if it was argued that UTMB-CMC was *not*, somehow, a government entity, it could still be liable as a private corporation under § 1983 if it "assume[s] the role of providing an essential state function."  *Emmett v. Olds*, No. 4:18-cv-00877, 2021 WL 4034128, at *6 (S.D. Tex. Sept. 3, 2021) (citations omitted).

[10] Plaintiff indicated at the June 6, 2023, hearing that, if Defendant UTMB-CMC's claim for sovereign immunity was ultimately denied, she intended to file an amended complaint pleading a proper *Monell* claim.  It is unclear to the undersigned why such a claim was not pleaded in the original complaint, particularly if Plaintiff was apparently aware of the need for it.  At this time, however, the undersigned finds that justice requires that Plaintiff be granted leave to amend her complaint to allege a *Monell* claim against Defendant UTMB-CMC.  The undersigned may not be so inclined to grant leave to retroactively fix pleading errors in the future.

The undersigned therefore orders as follows: (1) Plaintiff may file an amended complaint[11] alleging that Defendant UTMB-CMC is liable for Plaintiff's 42 U.S.C. § 1983 claims under an actionable *Monell* theory of liability on or before **July 21, 2023**; Plaintiff may, alternatively, file a motion to voluntarily dismiss Defendant UTMB-CMC from this suit; (2) if Plaintiff files an amended complaint pleading a *Monell* claim against Defendant UTMB-CMC, Defendant UTMB-CMC must file a motion for summary judgment on the issue of sovereign immunity, under the *Clark* factors, on or before **August 4, 2023**, and the court will determine the issue of Defendant UTMB-CMC's sovereign immunity when it is fully briefed; and (3) Defendant UTMB-CMC Motion to Dismiss (doc. #7) Plaintiff's claims against Defendant UTMB-CMC on the ground that it is entitled to sovereign immunity is denied as moot on that issue pending Plaintiff's submission of an amended complaint and Defendant UTMB-CMC's submission of a motion for summary judgment on the matter.

## IV.    Discussion: Remaining Rule 12(b)(6) Challenges

### A.    UTMB Correctional Managed Care and Dr. Ernestine Julye's Motion to Dismiss (Doc. #7)

Defendants UTMB-CMC[12] and Julye's Motion to Dismiss (doc. #7) seek dismissal of all claims against them on the following grounds: (1) Julye is entitled to qualified immunity; (2) the statute of limitations has expired on all of Plaintiff's claims; and (3) Plaintiff has failed to plead sufficient facts demonstrating causation as required for the two § 1983 Wrongful Death Claims.[13]

---

[11] The undersigned *only* grants Plaintiff leave to amend her complaint in order to properly allege a *Monell* claim against Defendant UTMB-CMC. Plaintiff is *not* granted leave to amend the complaint in any other way at this time.

[12] As Defendant UTMB-CMC's jurisdictional challenge on sovereign immunity is not yet resolved, the undersigned only resolves its 12(b)(6) challenge based on the statute of limitations, as the undersigned must still resolve Defendant Julye's challenge and the analysis is identical on that issue for either Defendant.

[13] Although this report refers to these two claims together in shorthand as "§ 1983 Wrongful Death Claims" or "Wrongful Death Claims" and separately as the "Wrongful Death Individual Claim" and the "Wrongful Death Representative Claim," these two claims are still brought under 42 U.S.C. § 1983 for Eighth Amendment violations,

1.   *Statute of Limitations*

Plaintiff brings this suit both in her individual capacity and in a representative capacity on behalf of Blackmon's estate.  (Doc. # 1 at 1.)  As demonstrated by the parties' considerable briefing (docs. #7, 15, 21, 29), the statute of limitations analysis depends significantly on the nuances of each of Plaintiff's claims which are, admittedly, complex here.  Neither Plaintiff nor Defendants have accurately analyzed all three § 1983 claims with respect to the statute of limitations. Accordingly, and for the parties' clarity, the undersigned does so now.

i.    Plaintiff's Eighth Amendment Claim

Plaintiff's Eighth Amendment Claim is brought in a representative capacity on behalf of Blackmon's estate for *his* injuries.  The statute of limitations for suits brought under § 1983 is determined by the general statute of limitations governing personal injuries in the forum state. *Shelby v. City of El Paso*, 577 Fed. App'x 327, 331 (5th Cir. 2014) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001)); *see also Owens v. Okure*, 488 U.S. 235, 249-50 (1989) ("[C]ourts considering 42 U.S.C. § 1983 claims should borrow the general or residual statute for personal injury actions.").  The general statute of limitations for personal injury actions in Texas is two years.  TEX. CIV. PRAC. & REM. CODE § 16.003(a); *see also Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989).  It is undisputed that the statute of limitations for Plaintiff's Eighth Amendment Claim is two years.  The parties disagree, however, as to the date the statute of limitations began to accrue for this claim.

---

because the allegation is that the constitutional violation, actionable under § 1983, caused the wrongful death.  *Cf., e.g.*, *Montano v. Orange Cnty., Tex.*, 842 F.3d 865, 882 (5th Cir. 2016) ("[A] plaintiff seeking to recover on a wrongful death claim under § 1983 must prove both the alleged constitutional deprivation required by § 1983 and the causal link between the defendant's unconstitutional acts or omissions and the death of the victim, as required by the state's wrongful death statute.") (citation omitted).

Although courts must look to state law to determine the length of the statute of limitations for § 1983 claims, federal law governs when that statute of limitations begins to accrue. *Burrell*, 883 F.2d at 418 (citations omitted) ("While the limitations period is determined by reference to state law, the standard governing the accrual of a cause of action under section 1983 is determined by federal law."); *see also Walker v. Epps*, 550 F.3d 407, 414 (5th Cir. 2008) ("We determine the accrual date of a § 1983 action by reference to federal law."). Under the federal standard, the statute of limitations for § 1983 claims begins to accrue when the party "knows or has reason to know of the injury which is the basis of the action." *Burrell*, 883 F.2d at 418 (quoting *Lavellee v. Listi*, 611 F.2d 1129, 1131 (5th Cir. 1980)); *see also Walker*, 550 F.3d at 414 ("[T]he statute of limitations period begins to run 'the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.'"). In evaluating when a party "knew or had reason to know" of the injury, courts look at two elements: "(1) the existence of the injury; and (2) causation, or the connection between the injury and the defendant's actions." *Riley v. Sheely*, No. 4:09cv425, 2010 WL 1537154, at *2 (E.D. Tex. Mar. 25, 2010) (citing *Piotrowski*, 51 F.3d at 516).

Under the federal accrual standard, the fact that Plaintiff's Eighth Amendment Claim is a representative claim brought on behalf of Blackmon's estate is significant. Plaintiff, as Blackmon's surviving spouse, occupies Blackmon's "legal shoes," as Plaintiff's ability to bring this claim derives wholly from the cause of action that Blackmon could have asserted for his own injuries if he had lived. *Cf., e.g.*, *Delesma v. Dallas*, 770 F.2d 1334, 1338-39 (5th Cir. 1985) (discussing the implications of a § 1983 claim based on a survivor's right to sue for a decedent's injuries on the decedent's behalf). As such, the "injury" that is the basis for Plaintiff's Eighth Amendment Claim is Defendants' deliberate indifference to Blackmon's serious medical needs.

18

The statute of limitations, therefore, began to accrue when Blackmon knew, or had reason to know, that he was receiving inadequate medical care as a result of Defendants' deliberate indifference. As the Fifth Circuit illustrated in *Brockman v. Texas Department of Criminal Justice*, 397 Fed. App'x 18, 22 (5th Cir. 2010), under the federal accrual standard for a § 1983 claim, the accrual date is not necessarily the date of the decedent's death, even when the injury *resulted* in death.[14]

In *Brockman*, the Fifth Circuit held that the plaintiff's representative[15] § 1983 claim for Eighth Amendment violations brought on behalf of her deceased son was barred by the statute of limitations. *Id.* The plaintiff's son, Christopher, who had been diagnosed with bipolar disorder, committed suicide while incarcerated. *Id.* at 19. The plaintiff, as the representative of her deceased son, brought suit under 42 U.S.C. § 1983 for Eighth Amendment violations on Christopher's behalf, alleging that the defendants had been deliberately indifferent to her son's condition during his incarceration by ignoring or denying that Christopher was bipolar and refusing him medical treatment. *Id.* at 19-20. The Fifth Circuit held that the plaintiff's factual allegations in the complaint made clear that Christopher "should have known that quality of the treatment he was receiving for his bipolar disorder [sic]" was inadequate prior to the date of his death. *Id.* at 22. Thus, the statute of limitations had begun to accrue prior to the date of Christopher's death, making the plaintiff's representative § 1983 claim for Eighth Amendment violations (i.e., deliberate indifference to the decedent's serious medical needs) untimely. *Id.*

---

[14] Importantly, although in *Brockman* the deliberate indifference to the decedent's serious medical needs did result in his death (as is the case here), it appears that the plaintiff there did *not* assert a wrongful death claim under 42 U.S.C. § 1983. *See, e.g.*, *Brockman*, 397 Fed. App'x at 19 (outlining the claims brought by the plaintiff). Rather, the plaintiff in *Brockman* only asserted a 42 U.S.C. § 1983 claim for violations of the decedent's Eighth Amendment right to medical care. Therefore, *Brockman* is only applicable to the Eighth Amendment Claim discussed in this section; it is not applicable to the two § 1983 Wrongful Death Claims that Plaintiff brings, as is discussed more fully *infra* § IV.A.1.ii ("Plaintiff's Two § 1983 Wrongful Death Claims").

[15] These types of claims are also referred to as "derivative" claims. For the purposes of this report, "derivative" and "representative" are used interchangeably.

Although, as Plaintiff notes (doc. #39 at 2), *Brockman* is an unpublished Fifth Circuit opinion, *Brockman* is highly instructive on when Blackmon "knew or had reason to know" of the injury that is the basis of Plaintiff's Eighth Amendment Claim—that injury being Defendants' deliberate indifference to Blackmon's serious medical needs in violation of his Eighth Amendment right to medical care. Furthermore, the undersigned is unaware of any contrary caselaw, binding or otherwise, that is directly on point.[16]

With the above analysis in mind, the undersigned now looks to the factual allegations in Plaintiff's complaint (doc. #1) to determine when Blackmon "knew or had reason to know" that he was receiving inadequate medical care as a result of Defendants' deliberate indifference, in violation of his Eighth Amendment right. As in *Brockman*, Plaintiff's factual allegations make clear that Blackmon knew, or had reason to know, that he was not receiving adequate medical treatment from UTMB-CMC and Julye prior to the date of his death. For example, Plaintiff alleges that, on or around August 23, 2020, Blackmon called Plaintiff crying due to excruciating pain and bleeding from his rectum, thereby prompting Plaintiff to call the Polunsky Unit to complain of Blackmon's care. (Doc. #1 at ¶ 31.) Additionally, Plaintiff has alleged that throughout the approximately nine months between Blackmon first reporting his symptoms in February 2020 (doc. #1 at ¶ 14) and being diagnosed with colon cancer on approximately October 13, 2020 (doc.

---

[16] In opposition to *Brockman*, Plaintiff cites to *Estate of King v. Polk*, No. 9:17-CV-31, 2020 WL 1510292, at *3-4 (E.D. Tex. Mar. 30, 2020). However, *Estate of King* does not support Plaintiff's position. In *Estate of King*, the plaintiff brought § 1983 claims both as representative of the decedent and individually (i.e., a § 1983 "true wrongful death" claim and a § 1983 "survivorship" claim). *Id.* at *1. The court noted that, under Texas law, the statute of limitations for a "true wrongful death" claim and for a "survivorship" claim (the state law claims analogous to the plaintiff's two § 1983 claims) begins to accrue on "the death of the injured person," citing to the applicable Texas statute. *Id.* at *3 (citing TEX. CIV. PRAC. & REM. CODE § 16.003). However, the *federal* accrual standard applies to Plaintiff's Eighth Amendment Claim, not the state standard. Moreover, *Estate of King* does not actually apply the federal accrual standard to the plaintiff's representative capacity § 1983 claim, nor does the court make any finding as to the actual date the statute of limitations began to accrue for any of the plaintiff's claims. Rather, *Estate of King* finds that both of the plaintiff's § 1983 claims are indisputably barred because, even *if* the statute of limitations began accruing on February 22, 2015 (the date of the decedent's death), the statute of limitations would have expired on February 22, 2017, and the plaintiff filed suit on February 24, 2017. *Id.* at *4.

#1 at ¶ 40), Blackmon had filed 23 sick call slips and Plaintiff had written 18 letters all in an attempt to get Blackmon the medical care necessary to diagnose his concerning symptoms of colon cancer.

Under these facts, the undersigned must find that Blackmon knew or had reason to know that he was not receiving adequate medical care prior to his death—the injury which forms the basis of Plaintiff's Eighth Amendment Claim.  Since Plaintiff filed suit on November 3, 2022, exactly two years after the date of Blackmon's death, it is not necessary for the undersigned to determine on precisely which date within this nine-month span that Blackmon knew or should have known of this injury.  Rather, the undersigned's finding that Blackmon knew or should have known of this injury at some date prior to the date of his death on November 3, 2020, is sufficient to conclude that Plaintiff's Eighth Amendment Claim is barred absent equitable tolling or another relevant exception to the statute of limitations.   The undersigned therefore finds that the two-year statute of limitations for Plaintiff's Eighth Amendment Claim, brought in a representative capacity on Blackmon's behalf for deliberate indifference to his serious medical needs, began to accrue prior to the date of Blackmon's death.

In her response, Plaintiff argued that, if the undersigned finds that the statute of limitations accrued prior to Blackmon's death, her Eighth Amendment Claim is still timely under the continuing violation doctrine.  (Doc. #15 at 21 n.18.)  The continuing violation doctrine is a federal common law doctrine governing accrual, and it has been applied to § 1983 denial of medical care claims.  *See, e.g.*, *Boswell v. Claiborne Parish Det. Ctr.*, 629 Fed. App'x 580, 585 (5th Cir. 2015) (finding that the plaintiff had pleaded a continuing violation in a § 1983 denial of medical care case).  However, at the June 6, 2023, hearing, Plaintiff stated on the record that the complaint does not contain facts supporting a continuing violation up to the date of Blackmon's death and that

Plaintiff would not be able to allege such facts even if given leave to amend her complaint. Due to Plaintiff's statements on the record at the hearing, the undersigned finds that Plaintiff has abandoned her argument regarding the continuing violation doctrine and need not consider whether it applies here. Plaintiff advances no other arguments for equitable tolling or other exceptions to the statute of limitations that could render her Eighth Amendment Claim timely.

Therefore, the undersigned finds that Plaintiff's Eighth Amendment Claim is barred by the statute of limitations. Defendant UTMB-CMC and Julye's Motion to Dismiss (doc. #7) Plaintiff's Eighth Amendment Claim is granted.

ii.    Plaintiff's Two § 1983 Wrongful Death Claims

Plaintiff's second and third claims are asserted under 42 U.S.C. § 1983 for wrongful death.[17]  (Doc. #1 at ¶ 59.) Plaintiff brings one of these claims on behalf of Blackmon (the Wrongful Death Representative Claim) and brings the other claim individually (the Wrongful Death Individual Claim). Both individual and representative[18] Eighth Amendment wrongful death claims may be brought under 42 U.S.C. § 1983. *See, e.g.*, *Wrongful Death Beneficiaries of Mary Amelia Milam v. Jackson Cnty. Sch. Dist.*, No. 1:20cv368-LG-JCG, 2021 WL 9455384, at *3 (S.D. Miss. Aug. 11, 2021) (citations omitted).

The statute of limitations for each of these two § 1983 Wrongful Death Claims is two years, and the federal accrual standard is when the party knew or had reason to know of the injury which is the basis for the claim. *See supra* § IV.A.1.i. However, the critical difference between Plaintiff's Eighth Amendment Claim and Plaintiff's two § 1983 Wrongful Death Claims is the "injuries" on

---

[17] *See supra* note 13.

[18] This report uses the terms "representative" and "individual" to differentiate between a wrongful death claim brought in a representative capacity on behalf of the decedent and a wrongful death claim brought individually for injuries suffered by Plaintiff herself. As noted *supra* note 15, some statutes and/or courts use other terms, such as "derivative" to refer to "representative." The cited case, *Wrongful Death Beneficiaries*, uses the terms "survival" and "true wrongful death," respectively, to differentiate between representative and individual claims.

which these claims are each based. As discussed above, Plaintiff's Eighth Amendment Claim is a representative claim based on *Blackmon's* injury of being denied constitutionally adequate medical care. In contrast, Plaintiff's Wrongful Death Individual Claim is based on *Plaintiff's* injury arising from Blackmon's death, such as loss of consortium. *Cf., e.g.*, *Wrongful Death Beneficiaries*, 2021 WL 9455384, at *2 (quoting *Caves v. Yarbrough*, 991 So. 2d 142, 148-49 (Miss. 2008)) (discussing the differences in "injuries" actionable under Mississippi's "wrongful death" versus "survival-type" state claims, which are substantively analogous to the two § 1983 Wrongful Death claims at issue here). Additionally, the injury giving rise to Plaintiff's Wrongful Death Representative Claim is Blackmon's *death* due to Defendants' deliberate indifference to his serious medical needs. Essentially, it is a claim that (somewhat paradoxically) Blackmon "could" have brought himself had he not died as a result of the alleged Eighth Amendment violations.

In this way, the two § 1983 Wrongful Death Claims are distinct injuries from the "pure" Eighth Amendment Claim brought by Plaintiff. The precise injuries that are the basis of these two claims—those injury being (1) the pain, suffering, and other damage Plaintiff has suffered as a result of her husband's death and (2) the pain, suffering, and other damage Blackmon suffered at death because of Defendants' constitutional violations—necessarily *could not have occurred* until the day Blackmon died. Thus, under the federal accrual standard, the two-year statute of limitations for the two § 1983 Wrongful Death Claims did not begin to accrue until November 3, 2020. Plaintiff filed suit on November 3, 2022. Accordingly, the undersigned finds that Plaintiff's two § 1983 Wrongful Death Claims are not barred by the statute of limitations.

This conclusion is supported by examining the complex case law on this issue. *Cf. Brockman*, 2397 Fed. App'x at 19 (finding that the statute of limitations for a *pure Eighth Amendment claim*, where the injury under the asserted claim was specifically for the denial of

constitutionally adequate medical treatment to the decedent, could begin to accrue prior to his death due to the nature of the injury); *Johnston v. United States*, 85 F.3d 217, 224 (5th Cir. 1996) (holding that, as a matter of federal law, wrongful death claims brought under the Federal Torts Claims Act do not begin to accrue under the federal accrual standard until the death occurs, as it is "the most basic fact of which a wrongful death plaintiff must be aware").

Moreover, the undersigned is particularly guided by *Reed v. Goertz*, 143 S. Ct. 955, 961-62 (2023). Specifically, the Supreme Court held that, under the federal accrual standard, the plaintiff's § 1983 claim for violations of his right to procedural due process was not a "complete and present" cause of action—and thus could not accrue—until all necessary elements of the § 1983 procedural due process claim (i.e., inadequate state process) had occurred. *Reed*, 143 S. Ct. at 961-62. The state proceeding in *Reed* was not complete until the state litigation had fully ended, which the Supreme Court determined was when the Texas Court of Criminal Appeals denied the plaintiff's motion for rehearing. *Id.*

The undersigned finds *Reed* highly instructive as to § 1983 wrongful death claims, particularly when compared to a § 1983 Eighth Amendment denial of medical care claim and the Fifth Circuit's application of the federal accrual standard to that kind of claim in *Brockman*. A necessary element of a § 1983 Wrongful Death claim is that the wrongful death occurred—these claims simply cannot be brought unless a person has died. In contrast, a wrongful death is *not* a necessary element of a "pure" § 1983 Eighth Amendment claim, where the injury is the denial of constitutionally adequate medical care to an incarcerated person. Thus, applying *Reed*, a § 1983 wrongful death claim cannot possibly be a "complete and present cause of action" until the wrongful death has actually occurred.

Defendants' Motion to Dismiss (doc. #7) is therefore denied on this ground as to Plaintiff's two § 1983 Wrongful Death claims.

### 2. *Julye and Qualified Immunity*

The doctrine of qualified immunity protects government officials from individual civil liability for action taken in their official capacity as long as their conduct does not violate clearly established law of which a reasonable person would have known. *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam). The qualified immunity analysis involves a two-pronged inquiry. First, "whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right." *Estate of Aguirre v. City of San Antonio*, 995 F.3d 395, 406 (5th Cir. 2021) (quoting *Tolan v. Cotton*, 572 U.S. 650, 655-56 (2014)). Second, "whether . . . the right in question was 'clearly established' at the time of the violation." *Id.* (quoting *Tolan*, 572 U.S. at 656).

Here, the alleged constitutional violation is Defendant Julye's deliberate indifference to Blackmon's serious medical needs. To establish deliberate indifference, Plaintiff must show that (1) Defendant Julye was aware of facts from which the inference could be drawn that a substantial risk of harm exists, and (2) Defendant Julye actually drew that inference. *Sims v. City of Jasper*, 543 F. Supp. 428, 440 (E.D. Tex. 2021) (quoting *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020)). Whether a prison official had the requisite knowledge of a substantial risk of harm "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk of from the very fact that the risk was obvious." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)). Deliberate indifference must go beyond negligence, and even gross negligence. *Id.* (quoting *Thompson v. Upshur Cnty.*, 245 F.3d 447, 458 (5th Cir. 2001)). Rather,

"the plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for serious medical needs." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001).

"Since *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), state officers have been on notice that deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment." *Id.* at 444 (quoting *Austin v. Johnson*, 328 F.3d 204, 210 (5th Cir. 2003)). Blackmon "had a clearly established right 'not to have [his] serious medical needs met with deliberate indifference.'" *Id.* (quoting *Estate of Bonilla v. Orange Cnty.*, 982 F.3d 298, 307 (5th Cir. 2020)); *see also Thompson*, 245 at 457. Throughout the months that Defendant Julye allegedly denied Blackmon the medical treatment he needed,[19] the law was "clearly established that a prison inmate could demonstrate a constitutional violation by showing that a prison official 'refuse to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Sims*, 543 F.3d at 444 (quoting *Easter v. Powell*, 467 F.3d 459, 465 (5th Cir. 2006)). Thus, the clearly established prong is met.

Moreover, Plaintiff has pleaded sufficient facts alleging that Defendant Julye's conduct violated Blackmon's clearly established constitutional right. At the motion to dismiss stage, the undersigned construes the pleaded facts in the light most favorable to Plaintiff and accepts as true all plausible inferences that arise from those facts. *See, e.g.*, *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citations omitted). Moreover, "[w]here a plaintiff provides more than a boilerplate recitation of the grounds for [liability] and instead makes some additional allegation to

---

[19] The "medical treatment he needed" refers to the opportunity for Blackmon to see a gastroenterologist to have a basic colonoscopy that multiple other medical professionals had stated that Blackmon needed *as soon as possible* due to serious concerns about colon cancer. (Doc. #1 at ¶¶ 23, 24, 35, 37, 43.)

put the [defendant] on fair notice of the grounds for which it is being sued," litigants must wait for summary judgment. *Thomas v. City of Galveston*, 800 F. Supp. 826, 844-45 (citing *Leatherman*, 507 U.S. 163, 168-69 (1993)).

Here, Plaintiff's well-pleaded facts and the inferences that arise from them indicate, at the very least, that it is plausible that Defendant Julye was deliberately indifferent to Blackmon's serious medical needs in violation of his Eighth Amendment right.  For example, Plaintiff alleges as follows: Defendant Julye "diagnosed" Blackmon with an infection despite having a test confirming that Blackmon had no infection, a test confirming that Blackmon likely had colon cancer, an expedited referral to a gastroenterologist for colon cancer screening as soon as possible, and Blackmon's consistent and serious symptoms highly indicative of colon cancer (doc. #1 at ¶ 22, 23, 25); Defendant Julye verbally and wantonly *ridiculed* Blackmon for believing that he had colon cancer, she *refused* to examine his colon, told Plaintiff that Blackmon's concerns about colon cancer were not serious,[20] became angry and irately responded to Blackmon's complaints, and even wrote in her medical report that Blackmon's concerns about colon cancer were to be *ignored* (doc. #1 at ¶¶ 26, 28-30); Defendant Julye deliberately denied Blackmon the opportunity to see a gastroenterologist despite his expedited referral (doc. #1 at ¶ 35); and Defendant Julye had actual knowledge that Blackmon was experience significant medical symptoms of colon cancer and was aware of the substantial risk of harm that would result from denying him treatment for colon cancer, but she denied him such medical treatment anyway (doc. #1 at ¶ 53, 54).

---

[20] Defendant Julye argues that facts such as this indicate that she did not subjectively believe that Blackmon had colon cancer, thus she did not have the requisite knowledge of a substantial risk of harm necessary to satisfy the deliberate indifference standard.  (Doc. #7 at 18-19.)  However, as discussed, the undersigned must construe the facts and inferences that arise from them in the light most favorable to Plaintiff on a motion to dismiss.  While Defendant Julye has offered one plausible inference from these facts, another plausible inference (and the one that is most favorable to Plaintiff) is that Defendant Julye intentionally denied Blackmon the medical care that she knew he needed out of deliberate indifference to his serious medical needs.

Plaintiff has met her burden of demonstrating that Defendant Julye was deliberately indifferent to Blackmon's serious medical needs in violation of his Eighth Amendment rights, thus the constitutional violation prong is also met.   Defendant Julye is not entitled to qualified immunity, and her Motion to Dismiss (doc. #7) is denied on this ground.

### 3.   *Causation*

#### i.    Julye and Causation

To recover on her two § 1983 Wrongful Death claim, Plaintiff must allege a causal link between Defendant Julye's unconstitutional acts or omissions and Blackmon's death, as required by the state's wrongful death statute.  *Montano v. Orange Cnty., Tex.*, 842 F.3d 865, 882 (5th Cir. 2016) (citing *Phillips ex rel. Phillips v. Monroe Cnty., Miss.*, 311 F.3d 369, 374 (5th Cir. 2002)). As Texas law defines causation by common law, Plaintiff can satisfy causation by demonstrating that Defendants' acts or omissions were a "substantial factor in bringing about [Blackmon's death] and without which [Blackmon's death] would not have occurred."  *Montano*, 842 F.3d at 882 (citing *Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 511 (Tex. 1995)).

As Plaintiff correctly argues in her response (doc. #15 at 25), at the motion to dismiss stage, Plaintiff need only plead facts that make it plausible that Defendants' wrongful actions more likely than not caused Blackmon's death.  *See also Slade v. City of Marshall*, 814 F.3d 263, 265 (5th Cir. 2016) ("[A] plaintiff seeking to recover under Texas's wrongful death statute must demonstrate that the defendant's wrongful actions more likely than not caused the decedent's death—not just that they reduced the decedent's chance of survival by some lesser degree.").  Here, that means Plaintiff must plead facts demonstrating that Defendant Julye's acts or omissions "more likely than not allowed for Mr. Blackmon's colon cancer to become [terminal] by spreading throughout his body, thus necessitating chemotherapy with a known risk of cardiac arrest;" Plaintiff can do so by

pleading facts "indicating that it is plausible that Mr. Blackmon had a greater than 50 percent chance of survival absent Defendants' conduct." (Doc. #15 at 25-26.)

The undersigned finds that Plaintiff has alleged sufficient facts to demonstrate causation with respect to Defendant Julye. For example, Plaintiff alleges:

> If the Defendants adequately responded to Mr. Blackmon's serious requests for medical care when they first arose, or even when he was first referred to see a gastroenterologist, then the recommended treatment would have been to remove the cancerous growth from Mr. Blackmon's rectum. In fact, it was only the deliberate indifference to Mr. Blackmon's serious health issues and the delay of medical treatment that allowed the cancer to spread, thus requiring the use of the chemotherapy. As a result, Defendants' deliberate indifference to Plaintiff's basic medical needs was the only reason behind the use of the chemotherapy that ended Mr. Blackmon's life.

(Doc. #1 at ¶ 43.) Plaintiff additionally alleges that "the delay in treatment led to the presence of cancer on [Blackmon's] liver, and in his lymph nodes, indicating that he was unlikely to survive the cancer," that Blackmon "was forty-two (42) years old when he was[sic] died because of the Defendants deliberate indifference," and that "Defendants' . . . violations of Mr. Blackmon's constitutional rights led to Mr. Blackmon's eventual death due to violations forcing Mr. Blackmon to receive the chemotherapy with a risk of cardiac arrest." (Doc. #1 at ¶¶ 40, 44, 59, 63.) Finally, Plaintiff alleges:

> The Defendants' denial of medical care, delay of appropriate medical testing, and delay of emergency medical treatment deprived Mr. Blackmon of his basic human need of medical care and allowed the colon cancer to spread throughout Mr. Blackmon's body. As a result, [Blackmon] suffered extreme pain and suffering, and was ultimately forced to receive a chemotherapy treatment that led to Mr. Blackmon's death.

(Doc. #1 at ¶ 55.)

Under the liberal pleading standard on a motion to dismiss discussed *supra* § IV.A.2, Plaintiff's well-pleaded facts and the inferences that arise from them indicate, at the very least, that it is plausible that Defendant Julye's acts or omissions were a substantial factor in causing Blackmon's death. Thus, the undersigned finds that Plaintiff has met her burden to show causation

with respect to Defendant Julye.  The Motion to Dismiss (doc. #7) Plaintiff's two § 1983 Wrongful Death claims on causation grounds is denied with respect to Julye.

ii.    UTMB-CMC and Causation

As explained *supra* § III, Plaintiff currently does not plead a viable cause of against Defendant UTMB-CMC under 42 U.S.C. § 1983.  Plaintiff, therefore, has been ordered to either file an amended complaint pleading a *Monell* claim against Defendant UTMB-CMC or voluntarily dismiss it from this suit.  Claims for *Monell* liability under 42 U.S.C. § 1983 brought against government entities employ a different causation analysis than 42 U.S.C. § 1983 claims brought against individuals, such as Defendant Julye.  *See, e.g.*, *Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017) (citing *Culbertson v. Lykos*, 790 F.3d 608, 628 (5th Cir. 2015)) (explaining that *Monell* claims require the plaintiff to establish (1) an official policy or custom exists, (2) the policy or custom was promulgated by the municipal policymaker, and (3) the policy or custom was the moving force behind the constitutional violation).

If Plaintiff files an amended complaint pleading the instructed *Monell* claim, Defendant UTMB-CMC may re-urge its causation argument.  Thus, the Motion to Dismiss (doc. #7) is denied as moot as to this issue.

### B.  Daniel Dickerson's Motion to Dismiss (Doc. #8)

Dickerson's Motion to Dismiss (doc. #8) seeks dismissal of all claims against him on the following grounds under Rule 12(b)(6): (1) Plaintiff fails to plead sufficient facts demonstrating deliberate indifference from Dickerson as required for Plaintiff's three 42 U.S.C. § 1983 claims; (2) Plaintiff fails to plead sufficient facts demonstrating Dickerson's supervisory liability, as required to sustain her three 42 U.S.C. § 1983 claims against Dickerson; and (3) Dickerson is entitled to qualified immunity.

1.  *Statute of Limitations – Sua Sponte*

Defendant Dickerson did not move to dismiss any of Plaintiff's claims against him on the ground that they are barred by the statute of limitations.  However, as all other Defendants in this suit moved to dismiss on such grounds, the undersigned has already analyzed whether any of Plaintiff's claims must be dismissed because they are barred by the statute of limitations.  For the reasons discussed therein, Plaintiff's Eighth Amendment Claim, alleged against Defendant Dickerson, must be dismissed as barred by the statute of limitations.

2.  *Dickerson and Deliberate Indifference*

Defendant Dickerson seeks dismissal of Plaintiff's claims against him on the ground that Plaintiff has failed to plead facts demonstrating that Dickerson was deliberately indifferent to Blackmon's serious medical needs, thus Plaintiff has not alleged that Defendant Dickerson violated Blackmon's constitutional rights.

As outlined above, the alleged constitutional violation here is Defendant Dickerson's deliberate indifference to Blackmon's serious medical needs.  To establish deliberate indifference, Plaintiff must show that (1) Defendant Dickerson was aware of facts from which the inference could be drawn that a substantial risk of harm exists, and (2) Defendant Dickerson actually drew that inference.  *Sims v. City of Jasper*, 543 F. Supp. 428, 440 (E.D. Tex. 2021) (quoting *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020)).

Plaintiff has pleaded sufficient facts to show that Defendant Dickerson was deliberately indifferent to Blackmon's serious medical needs.  Plaintiff's well-pleaded facts and the favorable inferences that arise from them indicate that it is at least *plausible* that Defendant Dickerson was aware of facts from which he could infer that a substantial risk of harm existed with respect to

31

Blackmon and colon cancer, and that Defendant Dickerson actually drew that inference. (Doc. #1 at ¶¶ 9, 34, 40, 53, 54.)

In finding that Plaintiff has pleaded sufficient facts to plausibly show that Defendant Dickerson was deliberately indifferent to Blackmon's serious medical needs, the undersigned construes the pleaded facts in the light most favorable to Plaintiff and accepts as true all plausible inferences that arise from those facts. The undersigned finds Plaintiff's allegation that she wrote eighteen letters (and made numerous phone calls) to Dickerson *personally*[21] (doc. #1 at ¶¶ 34, 40) informing him of Blackmon's serious concerns about colon cancer and requesting medical treatment, yet Dickerson took no action in response, is the most significant factual allegation supporting this finding. *See Ziglar v. Abbasi*, 582 U.S. 120, 146-47 (2017) (holding that the complaint's allegations supporting that the warden was personally aware of the constitutional violations committed by prison employees, ignored direct evidence of the violations from logs and other official records, and took no action to rectify or address the situation was sufficient to plausibly show the warden's deliberate indifference to the constitutional violations on a motion to dismiss); *Rodriguez v. Woods*, No. 98-40231, 1999 WL 197117, at *1 (5th Cir. Mar. 18, 1999) (per curiam) (holding that record evidence indicating that prison officials refused the inmate's request for medical treatment of a documented and advanced medical condition were repeatedly denied without justification was sufficient could support a finding of deliberate indifference to as to all defendants, including the warden).

---

[21] The caselaw is clear that merely submitting grievance forms, administrative complaints, or generalized letters to prison authorities, without more, is typically insufficient to support a plausible inference of the subjective knowledge necessary for deliberate indifference. *See, e.g.*, *Sawyer v. Stinson*, No. 22-0602, 2022 WL 3051833, at *6 & n.4 (finding that the plaintiff's allegation that he submitted request forms and complaints to the relevant prison authorities was insufficient to support a finding of deliberate indifference on a motion to dismiss because he failed to also allege that the relevant prison authorities actually *received* and read his requests for medical care and collecting cases) (citations omitted). However, Plaintiff's factual allegations are distinguishable from these cases as she specifically alleges that she wrote made calls and wrote many letters to Defendant Dickerson *personally*.

Plaintiff has plausibly alleged that Defendant Dickerson was deliberately indifferent to Blackmon's serious medical needs in violation of his Eighth Amendment rights. Defendant Dickerson's Motion to Dismiss (doc. #8) is denied on this ground.

### 3.  *Dickerson and Qualified Immunity*

As discussed previously,[22] the clearly established prong of the qualified immunity analysis is met.[23] Blackmon had a clearly established right not to have his serious medical needs met with deliberate indifference from Defendant Dickerson. Additionally, for the reasons discussed above,[24] the constitutional violation prong is also met. Defendant Dickerson is not entitled to qualified immunity, and his Motion to Dismiss (doc. #8) is denied on this ground.

### 4.  *Dickerson and Supervisory Liability*

Finally, Defendant Dickerson seeks dismissal of Plaintiff's claims against him on the ground that Plaintiff has failed to plead facts demonstrating Defendant Dickerson's supervisory liability, as is required to maintain Plaintiff's two § 1983 Wrongful Death Claims against him. However, Plaintiff is suing Defendant Dickerson in his *individual* capacity, not in his official capacity. (Doc. #1 at ¶ 9.) Accordingly, this defense is inapplicable to Plaintiff's claims.[25] Defendant Dickerson's Motion to Dismiss (doc. #8) is therefore denied as moot on this ground.

---

[22] *Supra* § IV.A.2.

[23] Although the question of whether a particular defendant's actions violated a plaintiff's constitutional right generally requires an individualized analysis when determining whether that defendant is entitled to qualified immunity, the question of whether the constitutional right allegedly violated was clearly established is a matter of law that is generally not unique to the analysis of a particularized defendant, as is the case here. The undersigned has already determined that the clearly established prong has been met and thus does not repeat the identical analysis here nor elsewhere.

[24] *Supra* § IV.B.2.

[25] Indeed, neither Plaintiff in her response or sur-reply (docs. #16, 31) or Defendant Dickerson in his reply (doc. #23) mention this defense any further, perhaps recognizing that it is inapplicable to this litigation.

C.  April Perisinger's Motion to Dismiss (Doc. #17)

Perisinger's Motion to Dismiss (doc. #17) seeks dismissal of all claims against her on the following grounds: (1) the statute of limitations has expired on all of Plaintiff's claims; (2) Perisinger is entitled to qualified immunity; and (3) Plaintiff has failed to plead sufficient facts demonstrating causation.

1.  *Statute of Limitations*

For the reasons discussed previously, Plaintiff's Eighth Amendment Claim alleged against Defendant Perisinger must be dismissed as barred by the statute of limitations.  However, Plaintiff's two § 1983 Wrongful Death Claims are not barred.  Thus, Defendant Perisinger's Motion to Dismiss (doc. #17) is granted in part and denied in part with respect to the statute of limitations.

2.  *Perisinger and Qualified Immunity*

As discussed: (1) qualified immunity involves a two-pronged analysis; (2) the alleged constitutional violation here is Defendant Perisinger's deliberate indifference to Blackmon's serious medical needs; and (3) to establish deliberate indifference, Plaintiff must show that (a) Defendant Perisinger was aware of facts from which the inference could be drawn that a substantial risk of harm exists, and (b) Defendant Perisinger actually drew that inference.

The clearly established prong of the qualified immunity analysis is met.[26]  Blackmon had a clearly established right not to have his serious medical needs met with deliberate indifference from Defendant Perisinger.

Plaintiff has pleaded sufficient facts to show that Defendant Perisinger's conduct violated Blackmon's clearly established constitutional right, particularly under the liberal pleading standard

---

[26] *Supra* § IV.A.2.

on a motion to dismiss.  Plaintiff's well-pleaded facts and the inferences that arise from them indicate that it is plausible that Defendant Perisinger was deliberately indifferent to Blackmon's serious medical needs in violation of his Eighth Amendment right.  For example, Plaintiff alleges as follows: Defendant Perisinger, despite knowing that Blackmon did not have hemorrhoids (Plaintiff has pleaded that his medical records confirmed this), only provided treatment to Blackmon for hemorrhoids and insisted to Plaintiff that Blackmon merely had hemorrhoids, refused to listen to Plaintiff's desperate requests for appropriate medical treatment, and hung up on Plaintiff (doc. #1 at ¶¶ 31-32); Defendant Perisinger *berated* Blackmon for placing a call for medical help due to being in such extreme pain that he was unable to stand, *cursing* at Blackmon, *admonishing* him for filing sick calls, and telling him to "*get on the fucking gurney*" (doc. #1 at ¶ 38); and Defendant Perisinger had actual knowledge that Blackmon was experiencing significant medical symptoms of colon cancer and was aware of the substantial risk of harm that would result from denying him treatment for colon cancer, but she denied him such medical treatment anyway (doc. #1 at ¶ 53, 54).

Plaintiff has met her burden of pleading that Defendant Perisinger was deliberately indifferent to Blackmon's serious medical needs in violation of his Eighth Amendment rights, thus the constitutional violation prong is also met.  Defendant Perisinger is not entitled to qualified immunity, and her Motion to Dismiss (doc. #17) is denied on this ground.

### 3.  *Causation*

For the reasons explained previously,[27] Plaintiff has pleaded sufficient facts to demonstrate causation.  Thus, Defendant Perisinger's Motion to Dismiss (doc. #17) Plaintiff's two § 1983 Wrongful Death Claims on causation grounds is denied.

---

[27] *Supra* § IV.A.3.

### D.  Teresa Jackson's Motion to Dismiss (Doc. #34)

Jackson's Motion to Dismiss (doc. #34) seeks dismissal of all claims against her on the following grounds: (1) the statute of limitations has expired on all of Plaintiff's claims; (2) Jackson is entitled to qualified immunity; and (3) Plaintiff has failed to plead sufficient facts demonstrating causation as required for Plaintiff's state and federal wrongful death claim.

#### 1.  *Statute of Limitations*

Plaintiff's Eighth Amendment Claim alleged against Defendant Jackson must be dismissed as barred by the statute of limitations, as discussed *supra* § IV.A.1.  However, Plaintiff's two § 1983 Wrongful Death Claims are not barred.  Thus, Defendant Jackson's Motion to Dismiss (doc. #34) is granted in part and denied in part with respect to the statute of limitations.

#### 2.  *Jackson and Qualified Immunity*

The standards for determining whether Defendant Jackson is entitled to qualified immunity have previously been set forth and for brevity will not be repeated here.

As with Defendants Julye, Dickerson, and Perisinger, the clearly established prong of the qualified immunity analysis is met.  Blackmon had a clearly established right not to have his serious medical needs met with deliberate indifference from Defendant Jackson.

Moreover, Plaintiff has pleaded sufficient facts alleging that Defendant Jackson's conduct violated Blackmon's clearly established constitutional right, particularly under the liberal pleading standard on a motion to dismiss.  Plaintiff's well-pleaded facts and the inferences that arise from them indicate that it is plausible that Defendant Jackson was deliberately indifferent to Blackmon's serious medical needs in violation of his Eighth Amendment right.  For example, Plaintiff alleges that: Defendant Jackson, despite knowing that Blackmon did not have hemorrhoids (Plaintiff has pleaded that his medical records confirmed this), ignored his concerning symptoms that were

36

inconsistent with hemorrhoids, merely gave him Pepto-Bismol, and left without following up (doc. #1 at ¶ 33); Defendant Jackson, in response to Blackmon being transported to medical due to experiencing such extreme pain that he was unable to stand, *yelled* at him to "*suck [your pain] up until your appointment*," *ignored* his requests for medical attention, told him to take more Pepto-Bismol in direct contradiction to the instructions from another doctor, and *threatened* to write Blackmon up if he did not take the medication and leave medical (doc. #1 at ¶¶ 38-39); and Defendant Jackson had actual knowledge that Blackmon was experiencing significant medical symptoms of colon cancer and was aware of the substantial risk of harm that would result from denying him treatment for colon cancer, but she denied him such medical treatment anyway (doc. #1 at ¶ 53, 54).

Plaintiff has met her burden of demonstrating that Defendant Jackson was deliberately indifferent to Blackmon's serious medical needs in violation of his Eighth Amendment rights, thus the constitutional violation prong is also met. Defendant Jackson is not entitled to qualified immunity, and her Motion to Dismiss (doc. #34) is denied on this ground.

3. *Causation*

For the reasons explained previously, Plaintiff has pleaded sufficient facts to demonstrate causation. Thus, Defendant Jackson's Motion to Dismiss (doc. #34) Plaintiff's two § 1983 Wrongful Death Claims on causation grounds is denied.

**V.    Conclusion**

For the parties' clarity, the undersigned finds as follows:

1. Defendants UTMB-CMC and Julye's Motion to Dismiss (doc. #7)

   a. The issue of Defendant UTMB-CMC's sovereign immunity must be resolved on a motion for summary judgment pending Plaintiff's submission of an amended complaint.

    b.  The statute of limitations has run on Plaintiff's 42 U.S.C. § 1983 Eighth Amendment Claim. The statute of limitations has not run on Plaintiff's two 42 U.S.C. § 1983 Wrongful Death Claims. The Eighth Amendment Claim is dismissed. The two § 1983 Wrongful Death Claims remain.

    c.  Defendant Julye is not entitled to qualified immunity.

    d.  Plaintiff has sufficiently alleged facts to demonstrate causation for her two § 1983 Wrongful Death claims as to Defendant Julye. Defendant UTMB-CMC may re-urge its causation argument if Plaintiff files an amended complaint.

2.  Defendants Polunsky Unit and Dickerson's Motion to Dismiss (doc. #8)

    a.  Plaintiff no longer alleges any cause of action against Defendant Polunsky Unit. Defendant Polunsky Unit should be dismissed from this suit.

    b.  As the statute of limitations has run on Plaintiff's 42 U.S.C. § 1983 Eighth Amendment Claim against Defendant Dickerson, this claim is dismissed. The two § 1983 Wrongful Death Claims remain.

    c.  Plaintiff has sufficiently alleged facts to demonstrate that Defendant Dickerson was deliberately indifferent in violation of Blackmon's constitutional rights.

    d.  Defendant Dickerson is not entitled to qualified immunity.

    e.  Defendant Dickerson's 12(b)(6) challenge relating to supervisory is denied as moot.

3.  Defendant Perisinger's Motion to Dismiss (doc. #17)

    a.  The statute of limitations has run on Plaintiff's 42 U.S.C. § 1983 Eighth Amendment Claim. The statute of limitations has not run on Plaintiff's two 42 U.S.C. § 1983 Wrongful Death Claims. The Eighth Amendment Claim is dismissed. The two § 1983 Wrongful Death Claims remain.

    b.  Defendant Perisinger is not entitled to qualified immunity.

    c.  Plaintiff has sufficiently alleged facts to demonstrate causation for her § 1983 wrongful death and state wrongful death claims.

4.  Defendant Jackson's Motion to Dismiss (doc. #34)

    a.  The statute of limitations has run on Plaintiff's 42 U.S.C. § 1983 Eighth Amendment Claim. The statute of limitations has not run on Plaintiff's two 42 U.S.C. § 1983 Wrongful Death Claims. The Eighth Amendment Claim is dismissed. The two § 1983 Wrongful Death Claims remain.

    b.  Defendant Jackson is not entitled to qualified immunity.

    c.  Plaintiff has sufficiently alleged facts to demonstrate causation for her § 1983 wrongful death and state wrongful death claims.

## VI.   Recommendation

For the foregoing reasons, the undersigned recommends that Defendants' Motions to Dismiss (docs. #7, 8, 17, 34) each be **GRANTED IN PART** and **DENIED IN PART** in accordance with the conclusions summarized above.  Defendant UTMB-CMC's Motion to Dismiss (doc. #7) based on sovereign immunity should be **DENIED AS MOOT** on that issue pending submission of an amended complaint and a motion for summary judgment on the matter. Defendant Polunsky Unit should be **DISMISSED** from this suit as Plaintiff no longer alleges any cause of action against it.  Plaintiff's 42 U.S.C. § 1983 Eighth Amendment Claim should be **DISMISSED** as to all remaining Defendants.  All other grounds for dismissal in the Motions to Dismiss (docs. #7, 8, 17, 34) should be **DENIED**.

## VII.   Objections

**<u>Within ten (10)[28] days after service of the magistrate judge's report</u>**, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge.  28 U.S.C. § 636(b)(1)(C).  To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is

---

[28] Typically, a party may file objections within fourteen days of service.  However, the objection period for this report is shortened to ten days in light of the deadlines for Plaintiff's amended complaint and, if applicable, the parties' summary judgment briefing.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2); E.D. Tex. Civ. R. CV-72(c); *see Spikes v. TLG Rests., LLC/The Lewis IZU Grp. Rests., LLC*, No. 9:18-CV-122, 2020 WL 262984, at *6 n.2 (E.D. Tex. Jan. 9, 2020).

found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

### VIII.   Order on the Issue of Defendant UTMB-CMC's Sovereign Immunity

For the reasons discussed *supra* § III, the issue of Defendant UTMB-CMC's sovereign immunity must be resolved on a motion for summary judgment pending Plaintiff's submission of an amended complaint alleging a proper *Monell* claim against Defendant UTMB-CMC.

Accordingly, it is **ORDERED** that Plaintiff file an amended complaint alleging how Defendant UTMB-CMC is liable for Plaintiff's two 42 U.S.C. § 1983 claims under an actionable *Monell* theory of liability on or before **July 21, 2023**.  If is further **ORDERED** that, if Plaintiff files an amended complaint, Defendant UTMB-CMC shall file a motion for summary judgment on the issue of sovereign immunity, under the *Clark* factors, on or before **August 4, 2023**.  Plaintiff is **ORDERED** to file a response on or before **August 18, 2023**.  No extensions will be granted but for good cause shown.

**SIGNED this the 7th day of July, 2023.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE

40