IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| DANA BLACKMON as surviving spouse and Representative of the Estate of JACOB BLACKMON,<br>   *Plaintiff*,<br><br>     v.<br><br>TEXAS DEPARTMENT OF CRIMINAL JUSTICE ALLAN B. POLONSKY UNIT, UTMB CORRECTIONAL MANAGED CARE, DANIEL DICKERSON, APRIL PERISINGER, TERESA JACKSON, and DR. ERNESTINE JULYE,<br>   *Defendants*. | § § § § § § § § § § § § § § | CIVIL ACTION NO.  9:22-CV-182-MJT-CLS |

**ORDER OVERRULING DEFENDANTS' OBJECTIONS AND
ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

  The District Court referred this proceeding to the Honorable Christine L. Stetson, United States Magistrate Judge, for consideration and disposition of the following motions: (1) Defendants UTMB Correctional Managed Care ("UTMB-CMC") and Dr. Ernestine Julye's Motion to Dismiss [Dkt. 7]; (2) Defendants Texas Department of Criminal Justice: Allan B. Polonsky Unit ("Polunsky Unit") and Daniel Dickerson's Motion to Dismiss [Dkt. 8]; (3) Defendant April Perisinger's Motion to Dismiss [Dkt. 17]; and (4) Defendant Teresa Jackson's Motion to Dismiss [Dkt. 34].

  On July 7, 2023, Judge Stetson entered a Report and Recommendation [Dkt. 46] with the following conclusions and recommendations granting in part and denying in part each Motion to Dismiss:

1. The issue of Defendant UTMB-CMC's sovereign immunity should be denied as moot pending submission of an amended complaint and, thereafter, additional briefing on the issue.

2. Plaintiff's 42 U.S.C. § 1983 Eighth Amendment right to medical care claim [hereinafter "Eighth Amendment Claim"] should be dismissed as to all parties as barred by the statute of limitations; Plaintiff's two other 42 U.S.C. § 1983 claims, brought pursuant to the Eighth Amendment for wrongful death [hereinafter "Wrongful Death Claims], are not barred.

3. Defendant Julye is not entitled to qualified immunity.

4. Plaintiff has sufficiently alleged facts to demonstrate causation for her two remaining 42 U.S.C. § 1983 claims.

5. Defendant Polunsky Unit should be dismissed from this suit as Plaintiff no longer alleges any causes of action against it.

6. Plaintiff has sufficiently alleged facts to demonstrate that Defendant Dickerson was deliberately indifferent, and Defendant Dickerson is not entitled to qualified immunity.

7. Defendant Dickerson's 12(b)(6) challenge relating to supervisory liability is denied as moot.

8. Defendant Perisinger is not entitled to qualified immunity.

9. Defendant Jackson is not entitled to qualified immunity.

[Dkt. 46 at 37-39].

Defendants UMTB-CMC, Perisinger, Jackson, and Julye ("UTMB Defendants") and Defendant Dickerson filed objections to certain findings of fact and conclusions of law on July 17, 2023. [Dkts. 47, 48]. No other objections were filed.

A party who timely files specific, written objections to a magistrate judge's report and recommendation is entitled to a *de novo* determination of those findings or recommendations to which the party specifically objects. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2)-(3). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. "Frivolous,

conclusive or general objections need not be considered by the district court." *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982) (en banc), *overruled on other grounds by Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1412 (5th Cir. 1996) (en banc).

### I. The Report and Recommendation is adopted as to the unobjected-to findings of fact and conclusions of law.

No party objected to the following findings of fact and conclusions of law:

- Plaintiff's 42 U.S.C. § 1983 Eighth Amendment Claim should be dismissed as to all parties as barred by the statute of limitations; Plaintiff's two 42 U.S.C. § 1983 Wrongful Death Claims are not barred.

- Defendant Julye is not entitled to qualified immunity.

- Plaintiff has sufficiently alleged facts to demonstrate causation for her two remaining 42 U.S.C. § 1983 claims.

- Defendant Polunsky Unit should be dismissed from this suit as Plaintiff no longer alleges any causes of action against it.

- Defendant Dickerson's 12(b)(6) challenge relating to supervisory liability is denied as moot.

- Defendant Perisinger is not entitled to qualified immunity.

- Defendant Jackson is not entitled to qualified immunity.

The Court has received and considered the Report and Recommendation of the United States Magistrate Judge pursuant to such referral, along with the record, pleadings, and all available evidence. After careful consideration, the Court finds that the above unobjected-to findings of fact and conclusions of law of the United States Magistrate Judge are correct.

Accordingly, the above unobjected-to findings of fact and conclusions of law in the Report and Recommendation of the United States Magistrate Judge [Dkt. 46] are adopted. Plaintiff's 42 U.S.C. § 1983 Eighth Amendment Claim is dismissed. Defendant Polunsky Unit is dismissed

from this suit. All other grounds[1] for dismissal in the relevant motions to dismiss based on the above unobjected-to findings of fact and conclusions of law are denied.

## II. UTMB Defendants' objection [Dkt. 47] is overruled.

Judge Stetson's Report and Recommendation [Dkt. 46] included an order for Defendant UTMB-CMC and Plaintiff to submit additional briefing on the issue of Defendant UTMB's sovereign immunity. The report additionally determined that the burden of demonstrating that Defendant UTMB-CMC is entitled to sovereign immunity was on Defendant UTMB-CMC, rather than Plaintiff. In so finding, the report noted a contradiction in Fifth Circuit authority on which party bears the burden on the issue of sovereign immunity. [Dkt. 46 at 8-9, n.3].

The report ultimately concluded that the burden is on the party asserting sovereign immunity for two reasons. First, the Fifth Circuit's Rule of Orderliness mandates that *Skelton v. Camp*, 234 F.3d 292, 297 (5th Cir. 2000), which holds that the burden is on the party asserting sovereign immunity, controls. *See, e.g.*, *Harvey v. Black*, 913 F.2d 226, 228 n.2 (5th Cir. 1990) ("When two panel opinions appear in conflict, it is the earlier which controls."). Second, the cases in which the Fifth Circuit and other circuits have substantively considered the issue have held that the burden is on the entity asserting sovereign immunity, whereas the cases where the Fifth Circuit has contradicted *Skelton* do not contain any substantive consideration of the issue and simply state the general rule that the party asserting jurisdiction bears the burden without further discussion or acknowledgement of its own contrary caselaw. *See, e.g.*, *Canada Hockey, L.L.C. v. Tex. A&M Univ. Athletic Dep't*, No. 20-20503, 2022 WL 445172, at *2 (5th Cir. Feb. 14, 2022) (citation omitted) ("A plaintiff bears the burden of proof that jurisdiction exists."); *Daniel v. Univ. of Tex.*

---

[1] These grounds include causation, the statute of limitations for the two 42 U.S.C. § 1983 Wrongful Death Claims, and qualified immunity as to Defendants Julye, Perisinger, and Jackson.

4

*Southwestern Med. Ctr.*, 960 F.3d 253, 256 (5th Cir. 2020) (citation omitted) ("[P]laintiff bears the burden of proof that jurisdiction does in fact exist.").

Furthermore, the report found the reasoning proffered by courts that had substantively considered the issue persuasive. As Plaintiff discusses in her response [Dkt. 50] to the UTMB Defendants' objection, the underlying rationale for holding that the burden is on the party asserting sovereign immunity articulated by the Fifth Circuit and other circuit courts is based on "notable deviations from core jurisdictional principles in the Supreme Court's Eleventh Amendment jurisprudence." *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 238 (2d Cir. 2006).

The distinctions are as follows. First, a defendant may waive sovereign immunity, which is inconsistent with the fundamental principle that subject-matter jurisdiction *cannot* be waived. *Id.* (citing *Lapides v. Bd. of Regents*, 535 U.S. 613, 618-19 (2002)); *see also ITSI TV Prods., Inc.*, 3 F.3d at 1291 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985)) ("The [Supreme] Court has accordingly recognized that Eleventh Amendment immunity, *unlike a true jurisdictional bar*, may be expressly waived.") (emphasis added). Second, a court is not required to raise issues of sovereign immunity *sua sponte*, whereas a court must "*always* raise on its own motion any defect in subject matter jurisdiction." *Id.* (citations omitted) (emphasis added).

In light of these distinctions from fundamental jurisdictional principles, courts have concluded that the general rule that the party asserting jurisdiction bears the burden should not necessarily apply. Rather, sovereign immunity is analogous "to an affirmative defense, which a party may invoke or not as it wishes," *Woods*, 466 F.3d at 238, and "[l]ike any other such defense, that which is promised by the Eleventh [sovereign immunity] must be proved by the party that asserts it and would benefit from its acceptance," *ITSI TV Prods.*, 3 F.3d at 1291-92; *see also Hutto*

*v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014) ("We therefore conclude that sovereign immunity is akin to an affirmative defense, which the defendant bears the burden.  In so concluding, we join every other court of appeals that has addressed the issue.") (collecting cases).

The Court has conducted *de novo* review of the UTMB Defendants' objection and agrees with the Report and Recommendation [Dkt. 46] that the burden is on the entity asserting sovereign immunity.  This objection is overruled.

### III. Defendant Dickerson's objections are overruled.

Defendant Dickerson objects to the Report and Recommendation's findings that, based on the well-pleaded allegations in the complaint and drawing the reasonable inferences that arise from them in Plaintiff's favor, (1) Dickerson was deliberately indifferent to Jacob Blackmon's ("Blackmon") serious medical needs and (2) Dickerson violated clearly established law.

#### A. Deliberate Indifference

As discussed in the report [Dkt. 46 at 25-26, 31], the alleged constitutional violation is that Dickerson was deliberately indifferent to Blackmon's serious medical needs.  To state a claim for deliberate indifference, the factual allegations and reasonable inferences that arise from them (drawn in Plaintiff's favor) must demonstrate that (1) Dickerson was aware of facts from which the inference could be drawn that a substantial risk of harm to Blackmon existed, and (2) Dickerson actually drew that inference.  *Sims v. City of Jasper*, 543 F. Supp. 428, 440 (E.D. Tex. 2021) (quoting *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020)).

Dickerson objects to the report's finding that Plaintiff stated a claim for deliberate indifference on the ground that he lacked sufficient personal involvement and subjective

knowledge.[2]  In support of his contention, he argues that he, as warden, is not a medical professional and therefore (1) was entitled to rely on the medical conclusions of the UTMB Defendants, who are the medical personnel in this suit, and (2) could not have overridden their medical decisions.

It may be true that, as a general rule, Dickerson can rely on the medical opinions of prison medical personnel. *See, e.g.*, *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) ("If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."); *Miltier v. Beorn*, 896 F.2d 848, 855 (4th Cir. 1990) ("No record evidence suggests why the wardens should not have been entitled to rely upon their health care providers' expertise."). However, these same courts further explained that this general rule may not apply if there is a "reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner," and such facts can establish deliberate indifference. *Spruill*, 372 F.3d at 237; *see also Miltier*, 896 F.2d at 854-55 (finding the wardens' reliance on medical provider's expertise justified *because* there was no record evidence to suggest otherwise and, in any event, the wardens closely monitored the prisoner's health and ensured she received medical treatment).

Here, Plaintiff's factual allegations and the favorable inferences that arise from them do suggest that Dickerson had reason to believe, or actual knowledge, that the UTMB Defendants were mistreating, or not treating, Blackmon. As explained in the report, Plaintiff's allegation that she wrote eighteen letters and made numerous phone calls to Dickerson personally informing him of Blackmon's serious and ultimately well-founded concerns of colon cancer were significant in

---

[2] In substance, these two grounds overlap. Dickerson argues he lacked subjective knowledge because he had no personal involvement in the alleged acts and omissions that form the basis of this suit, which Dickerson contends only involve medical personnel. [Dkt. 48 at 3, 6-7].

finding that Dickerson was aware of facts from which he could infer a substantial risk of harm and actually drew that inference as required by the deliberate indifference standard. [Dkt. 46 at 32 & n.21]. Additionally, Blackmon was advised by at least three different medical professionals that he was exhibiting serious signs of color cancer and should see a gastroenterologist for a colon cancer screening as soon as possible, [Dkt. 1 at ¶¶ 19, 23, 37]. Taking these facts together, the Court may infer that the numerous letters, phone calls, and sick call slips made Dickerson aware of the advice of these three medical professionals. As such, these facts support the inference that Dickerson was aware that the UTMB Defendants were denying Blackmon necessary medical care.

At summary judgment, Dickerson may dispute that he received or read such letters or was otherwise made subjectively aware of the substantial risk of harm to Blackmon through the multitude of letters, phone calls, sick call slip—or any other fact alleged in the complaint. Dickerson may argue, as he so contends in his objection, that he "has no discretion about the medical decisions that are the crux of the Complaint," he only "allegedly" received these letters and phone calls informing him about Blackmon's condition, he was entitled to rely and/or truly did rely on the UTBM Defendants' medical judgment, and the UTMB Defendants were the only parties responsible for Blackmon's medical care. [Dkt. 48 at 4-5]. At the motion to dismiss stage, however, such contentions are not considered, as the Court must accept Plaintiff's well-pleaded factual allegations as true and draw all reasonable inferences that arise from those facts in Plaintiff's favor.

The report found, and the Court agrees, that Plaintiff has pleaded sufficient factual allegations to demonstrate that Dickerson was aware of facts from which he could infer that a substantial risk of harm to Blackmon existed, and that Dickerson actually drew that inference.

8

Finally, the cases[3] Dickerson has cited in support of his arguments are either not on point to the facts or claims alleged in this suit or do not support his arguments at this stage of the litigation. Dickerson cites to as *Hazel v. Bell*, No. 9:08cv216, 2010 WL 1038743, at *27 (E.D. Tex. Jan. 8, 2010). *Hazel* is a conditions of confinement claim, thus the holding is strongly driven by a failure of the plaintiff—who was proceeding *pro se*—to demonstrate the alleged constitutional violations were the result of a policy, custom, or practice. *Id.* at *27 ("None of the individuals named in this lawsuit are policy-makers with authority over medical decisions, including staffing decisions. Thus, Hazel has shown no basis for liability on the part of any of the named defendants in this lawsuit, and his claim on this point is without merit."). Additionally, the plaintiff's medical care-related conditions of confinement claims are very dissimilar from that of Blackmon's, as the plaintiff in *Hazel* alleged that one evening, during a lockdown, he was temporarily unable to receive his medication due to understaffing issues and experienced chest pains. *Id.* He was examined by medical personnel several hours later, and he "did not suffer any harm as a result of the conditions of which he complains." *Id.* at *27-28. This is different from the instant suit, in which Blackmon exhibited serious and clear signs of colon cancer for months, was advised by at least three medical practitioners that he needed an urgent colon cancer screening, begged for such medical treatment through all available channels (including to Warden Dickerson), and yet was denied that treatment for nearly ten months then died shortly thereafter.

The medical care-related claims in *Nelson v. Griffin* are also dissimilar from the instant suit. *Nelson v. Griffin*, No. 5:16-CV-00049-RWS, 2017 WL 2274252, at *5 (E.D. Tex. May 25, 2017). In *Nelson*, the plaintiff complained of pain from a back injury and was, in essence, unsatisfied with the treatment and pain management he was receiving. *Id.* at *1. Nelson had been

---

[3] The Court has already addressed Dickerson's citation to *Spruill*, 372 F.3d at 236.

examined by a doctor for his back pain five times and was seen frequently by medical personnel. *Id.* at *4 ("The information available to Griffin and Warden Page showed Plaintiff was being seen frequently by medical personnel; by February 22, 2016, Plaintiff had already seen Dr. Shah five times."). Furthermore, nothing in *Nelson* suggests that the warden had any reason to believe that Nelson was being mistreated or not treated at all by the prison medical professionals, thus the wardens were "entitled to rely on the judgment" of those medical professionals. In contrast, Blackmon was not permitted to see a gastroenterologist for months despite numerous referrals and advisements from medical practitioners, and Plaintiff has alleged facts supporting that Dickerson was aware of these referrals for colon cancer screening. These facts therefore give rise to the favorable inference that Dickerson knew that Blackmon was being denied the care he needed from the UTMB Defendants.

    In this case, Dickerson was not asked to render a medical judgment overriding that of the UTMB Defendants and determine the "proper course of treatment or the appropriate tests to run." *Id.* at *5. Rather, Dickerson was simply asked to *authorize* a specific and routine test—colon cancer screening with a gastroenterologist—that the UTMB Defendants were denying to Blackmon. Like in *Rodrigue v. Grayson*, No. 09-985, 2012 WL 4483438, at *9 (W.D. La. Sept. 28, 2012), *aff'd*, 557 Fed. App'x 341 (5th Cir. 2014), Blackmon "was not given the opportunity for a qualified physician to attempt to diagnose his condition," and Dickerson was personally involved in that denial of medical care based on the factual allegations in the complaint. Finally, as discussed in *Spruill*, the standard for deliberate indifference to serious medical needs set forth in *Estelle v. Gamble*, 429 U.S. 97 (1976), is met "(1) 'where prison authorities deny reasonable requests for medical treatment . . . and such denial exposes the inmate to undue suffering or the threat of a tangible residual injury' . . . and (2) 'where knowledge of the need for medical care [is

accompanied by the] . . . intentional refusal to provide that care.'" *Spruill*, 372 F.3d at 235 (citations omitted); *see also Galvan v. Calhoun Cnty.*, 19 Fed. App'x 372, 376 (5th Cir. 2018) (citing *Easter v. Powell*, 467 F.3d 459, 461-65 (5th Cir. 2006)) (holding that even a three-day delay in medical care in the face of continued complaints of pain can give rise to a claim of deliberate indifference). Plaintiff has sufficiently pleaded facts to support that Dickerson acted with deliberate indifference to Blackmon's serious medical needs.

The Court has conducted *de novo* review of the Dickerson's objection and agrees with the Report and Recommendation [Dkt. 46] that the factual allegations demonstrate that he was deliberately indifferent to Blackmon's serious medical needs. This objection is overruled.

### B. Qualified Immunity: Clearly Established Law

As discussed in the report [Dkt. 46 at 25], the qualified immunity analysis involves a two-pronged inquiry, asking: (1) "whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right," *Estate of Aguirre v. City of San Antonio*, 995 F.3d 395, 406 (5th Cir. 2021) (quoting *Tolan v. Cotton*, 572 U.S. 650, 655-56 (2014)); and (2) "whether . . . the right in question was 'clearly established' at the time of the violation," *id.* (quoting *Tolan*, 572 U.S. at 656).

Dickerson objects to the finding as to the second prong—that he violated clearly established law. As stated in the report, the alleged constitutional violation is Dickerson's deliberate indifference to Blackmon's serious medical needs. It is well-settled law that a prisoner has a clearly established right not to have his serious medical needs met with deliberate indifference from prison officials, including a warden. *See, e.g.*, *Sims v. City of Jasper*, 543 F. Supp. 3d 428, 444 (E.D. Tex. 2021) (quoting *Estate of Bonilla v. Orang Cnty.*, 982 F.3d 298, 307 (5th Cir. 2020)); *Austin v. Johnson*, 328 F.3d 204, 210 (5th Cir. 2003) ("Since [*Estelle v. Gamble*,

429 U.S. 97, 104 (1976)], state officers have been on notice that deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment.").

As the basis for his objection, Dickerson attempts to narrow the right to whether "a correctional officer, who is not a medical provider, is deliberately indifferent when relying on a medical provider's diagnosis." [Dkt. 48 at 9]. Dickerson provides no case in which a court has defined the right so narrowly, particularly in a relevant context, nor has Dickerson cited otherwise contradictory caselaw.[4] Indeed, the law is well-settled[5] and contradicts Dickerson's position. In support, Dickerson recites the general rule that courts should not define clearly established law at a "high level of generality." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). However, as Plaintiff notes [Dkt. 51 at 6], "[d]istinctions between cases are . . . relevant only if they make the applicability of a prior precedent unclear." *Boyd*, 2023 WL 4702122, at *6; *see also Ramirez v. Martinez*, 716 F.3d 369, 379 (5th Cir. 2013) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)) ("The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'").

Dickerson also cites to *Davis v. Gentry*, in which the plaintiff brought an Eighth Amendment denial of medical care claim based on the prison officers' refusal to let him use his cane to access a shower, instead requiring him to let the prison officers help him into the shower.

---

[4] In contrast, Plaintiff cites to several similar cases involving non-medical prison officers demonstrating that the law was clearly stablished in her response. [Dkt. 51 at 6-7].

[5] *See* cases cited in the preceding paragraph; *see also, e.g.*, *Delaughter v. Woodall*, 909 F.3d 130, 140 (5th Cir. 2018) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)) ("As we have noted, it is clearly established that delaying medical care can constitute an Eighth Amendment violation if the prison official 'knows that [the] inmate[] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it,' and the delay results in substantial harm."); *Rodrigue v. Grayson*, 557 Fed. App'x 341, 347 (5th Cir. 2014) (citations omitted) (rejecting the defendant's argument that the plaintiff's right to medical care was not clearly established because the inquiry was conducted "at too general a level," noting that "numerous authorities support the contrary proposition").

12

*Davis v. Gentry*, No. 21-40186, 2023 WL 2706905, at *2 (5th Cir. Mar. 29, 2023). Based on these facts, the Fifth Circuit held, *inter alia*,[6] these allegations were not the type of conduct that violated clearly established law. This case is not analogous to the instant suit, where the factual allegations are that the prisoner complained of highly concerning symptoms of colon cancer for months and begged to see a gastroenterologist for a colonoscopy to diagnose the colon cancer, accompanied by numerous personal requests to Dickerson to allow him the simple diagnostic procedure that were ignored. This is the type of conduct—deliberate indifference to Blackmon's serious medical needs—that violates Blackmon's constitutional rights and for which Dickerson is alleged to be fairly on notice, as is the relevant inquiry for the clearly-established prong of qualified immunity. *Boyd v. McNamara*, No. 20-50945, 2023 WL 4702122, at *6 (5th Cir. July 24, 2023) (citation omitted) ("The touchstone of the [clearly established] inquiry is 'fair notice.'").

The Court has conducted *de novo* review of Dickerson's objection and agrees with the report's finding that the clearly-established prong of the qualified immunity analysis is met. This objection is overruled.

**IV.    Order**

The Court has conducted *de novo* review of the objected-to findings of the Report and Recommendation [Dkt. 46] and concludes they are correct. It is therefore ORDERED that the objected-to findings of the Report and Recommendation [Dkt. 46] are ADOPTED. The UTMB Defendants' objection [Dkt. 47] is OVERRULED. Defendant Dickerson's objections [Dkt. 48] are OVERRULED.

The Court has additionally reviewed the unobjected-to findings of fact and conclusions of law of the United States Magistrate Judge and concludes they are correct. It is therefore further

---

[6] The Fifth Circuit first held that this conduct did not constitute deliberate indifference and then made an additional finding with respect to the clearly established prong of the qualified immunity analysis.

13

ORDERED that the unobjected-to findings of fact and conclusions of law in the Report and Recommendation of the United States Magistrate Judge [Dkt. 46] are ADOPTED.

Accordingly, the findings of fact and conclusions of law in the Report and Recommendation [Dkt. 46], summarized at the beginning of this order, are ADOPTED in full. Defendants' Motions to Dismiss [Dkts. 7, 8, 17, 34] are GRANTED IN PART and DENIED IN PART consistent with this order.

**SIGNED this 22nd day of August, 2023.**

*Michael J. Truncale*
Michael J. Truncale
United States District Judge