IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | |
|---|---|
| DANA BLACKMON as surviving spouse and Representative of the Estate of JACOB BLACKMON,<br>    *Plaintiff*,<br><br>v.<br><br>TEXAS DEPARTMENT OF CRIMINAL JUSTICE ALLAN B. POLONSKY UNIT, UTMB CORRECTIONAL MANAGED CARE, DANIEL DICKERSON, APRIL PERISINGER, TERESA JACKSON, and DR. ERNESTINE JULYE,<br>    *Defendants*. | §<br>§<br>§<br>§<br>§<br>§   CIVIL ACTION NO. 9:22-CV-182-MJT-CLS<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

**REPORT AND RECOMMENDATION ON**
**DEFENDANT UTMB-CMC's MOTION FOR SUMMARY JUDGMENT (Doc. #52)**

Pursuant to 28 U.S.C. § 636 and the Local Rules of Court for the Assignment of Duties to United States Magistrate Judges, the district court referred this proceeding to the undersigned magistrate judge to conduct all pretrial proceedings, to enter findings of fact and recommend disposition on case-dispositive matters, and to determine non-dispositive matters. *See* 28 U.S.C. § 636(b)(1); E.D. Tex. Loc. R. CV-72. Before the court is Defendant UTMB Correctional Managed Care's ("UTMB-CMC") Motion for Summary Judgment. (Doc. #52.) After review, the undersigned recommends granting the motion.

**I. Background**

   A. Procedural Background

This case was brought by Plaintiff Dana Blackmon on behalf of her deceased husband, Jacob Allen Blackmon, against six defendants. (Doc. #1 at 1.) Ms. Blackmon alleges that her husband died in custody of the Texas Department of Criminal Justice ("TDCJ") "as a result of the

deliberate denial of treatment for colon cancer." (*Id.* at 2.) Plaintiff seeks recovery under 42 U.S.C. §1983 and Texas law. (*Id.*)

On January 30, 2023, Defendants UTMB-CMC and Dr. Ernestine Julye filed a motion to dismiss in which UTMB-CMC argued it was entitled to sovereign immunity. (Doc. #7 at 1.) The undersigned recommended denying the motion as moot pending the filing of Plaintiff's amended complaint. (Doc. #46.) The Report and Recommendation provided that if Plaintiff filed an amended complaint, Defendant UTMB-CMC may file a motion for summary judgment which addresses two questions: (1) whether UTMB-CMC is a separate entity from UTMB, and (2) if UTMB-CMC is a separate entity, do the *Clark* factors suggest it is entitled to sovereign immunity. (*Id.* at 14.) On July 21, 2023, Plaintiff filed her amended complaint. (Doc. #49.)

On August 4, 2023, Defendant UTMB-CMC filed a Motion for Summary Judgment. (Doc. #52.) Plaintiff filed a response on August 18, 2023. (Doc. #53.) On August 25, 2023, Defendant UTMB-CMC filed a reply to that response. (Doc. #56.) Plaintiff filed a sur-reply on September 1, 2023. (Doc. #58.) Plaintiff raised evidentiary objections in a separate filing (doc. #54) addressed by the undersigned in a concurrent order. The matter is now ripe for review.

B. Defendant UTMB-CMC's Factual Assertions and Argument

Defendant UTMB-CMC argues it is an arm of the state and, accordingly, entitled to Eleventh Amendment sovereign immunity barring Plaintiff's claims against it. (Doc. #52 at 26.) To determine whether a governmental entity is entitled to sovereign immunity, the court must address the six *Clark* factors: "(1) Whether the state statutes and case law view the agency as an arm of the state; (2) The source of the entity's funding; (3) The entity's degree of local autonomy; (4) Whether the entity is concerned primarily with local as opposed to statewide, problems; (5) Whether the entity has the authority to sue and be sued in its own name; and (6) Whether the entity

2

has the right to hold and use property." *Daniel v. Univ. of Tex. Sw. Med. Ctr.*, 960 F.3d 253, 265-57 (5th Cir. 2020) (quoting *Providence Behav. Health v. Grant Rd. Pub. Util. Dist.*, 902 F.3d 448, 456 (5th Cir. 2018); *see generally Clark v. Tarrant Cnty., Tex.*, 798 F.2d 736 (5th Cir. 1986). Defendant addresses each *Clark* factor as follows:

First, Defendant UTMB-CMC argues that it is an extension of UTMB, which is defined in caselaw and statutes as an arm of the state. (Doc. ##52 at 14-17, 56 at 1-5.) Defendant cites numerous state statutes that empower UTMB to act as an arm of the state, (Doc. #52 at 14-15); TEX CONST. art. 7 §18(b)(9); TEX. EDUC. CODE §74.001; TEX. GOV'T CODE §§501.051(a)-(e), .060(b), as well as caselaw recognizing UTMB as an arm of the state for sovereign immunity purposes. (Doc. #52 at 16-17); *Lewis v. Univ. of Tex. Med. Branch at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011); *Bessman v. Powell*, 991 F. Supp. 830, 837 (S.D. Tex. 1998). In his affidavit, the Senior Vice President of UTMB-CMC, Dr. Owen. J. Murray, states that as "[t]he Correctional Managed Care Division is part of UTMB, it is not a sperate entity." (Docs. ##52 at 16, 52-1 at 3). Defendant likewise argues that the same principles which led the Fifth Circuit to declare an athletic department is an extension of Texas A&M University, apply to UTMB-CMC's status as an extension of UTMB. (Doc. #52 at 16.)

Second, Defendant UTMB-CMC argues that almost all its funding comes from the state, advising in favor of finding UTMB-CMC is entitled to sovereign immunity. (*Id.* at 17-18.) Defendant UTMB-CMC points to the legislative appropriations for inmate healthcare and caselaw suggesting that receiving some non-state funding does not impact the overall calculus of the second *Clark* factors. (*Id.* at 18-20.) The Motion for Summary Judgment also notes, albeit in a conclusory fashion, that "a civil recovery against UTMB-CMC would interfere with the state's fiscal autonomy." (*Id.* at 20.)

Third, Defendant UTMB-CMC argues that its "lack of local autonomy" suggests it is an arm of the state. (*Id.* at 20-21.) Defendant relies on testimony from Dr. Murray on the dependence of UTMB-CMC on UTMB,[1] and pointing to state administrative code and caselaw on the subject. Defendant asserts that the Fifth Circuit's holding that a university's athletics department was not independent from the state in *Canda Hockey* should result in a similar finding that UTMB-CMC is not independent from UTMB, an arm of the state. (Doc. #52 at 21.)

Fourth, Defendant UTMB-CMC argues that its concern with statewide problems suggests that it is an arm of the state. (*Id.*) Defendant notes its wide geographic footprint, how it cares for 78% of offenders in TDCJ custody, and how it provides healthcare to inmates from all over Texas at the hospital in Galveston. (*Id.* at 21-22.) Defendant cites several cases where courts in the Fifth Circuit have found an arm of the state may have statewide function even if its facilities are in one place. (*Id.*)

Fifth, Defendant UTMB-CMC argues that it does not have the authority to sue or be sued in its own name, suggesting it is an arm of the state. (*Id.*) Defendant cites Dr. Murray's testimony. (*Id.*) Defendant also addresses Plaintiff's observation that parties have filed suit against UTMB-CMC asserting these cases were filed by *pro se* plaintiffs and the failure to correct the record to name UTMB was an oversight as not every lawyer "is pedantic enough to seek either dismissal or correct based on misnomer." (Doc. #52 at 23.)

Sixth, Defendant argues that is "accountable to the state for its property," citing a series of state laws. (*Id.* at 25.) Defendants suggest that if UTMB-CMC were shut down, the facilities it

---

[1] Plaintiff raised objections to seven portions of Dr. Murray's testimony. (Doc. #54.) In a separate order, the undersigned sustained objections to two specific testimony excerpts. The undersigned notes that these struck portions of Dr. Murray's testimony are not considered for this instant motion for summary for judgment.

4

uses would "revert back to the control of TDCJ." (*Id.*) The sixth *Clark* factor, according to Defendant, counsels that UTMB-CMC is an arm of the state.

In sum, Defendant UTMB-CMC argues that while all *Clark* factors need not be met, all factors support finding UTMB-CMC is an arm of the state. (*Id.*) Accordingly, Defendant argues that it is entitled to sovereign immunity, barring Plaintiff's claim against Defendant. (*Id.* at 25-26.)

### C. Plaintiff's Factual Assertions and Argument

Plaintiff does not dispute the admissible facts offered by Defendant UTMB-CMC but supplements the factual record and interprets relevant case law differently. Plaintiff concludes that all six *Clark* factors indicate that UTMB-CMC is not an arm of the state. (Doc. #53 at 23.) The undersigned will outline Plaintiff's argument about each of the six *Clark* factors.

First, Plaintiff argues that neither precedent, nor statute treat UTMB-CMC as an arm of the state. Plaintiff believes Defendant UTMB-CMC is distinct from UTMB because it has its own budget, UTMB-CMC employees view UTMB-CMC as their employer, UTMB-CMC hires its own staff, and UTMB-CMC is not identified in UTMB's budget as an "auxiliary enterprise." (*Id.* at 12.) Accordingly, Plaintiff argues that Defendant UTMB-CMC cannot claim sovereign immunity based on caselaw regarding UTMB. (*Id.* at 13.) Likewise, Plaintiff notes that Defendant's reference to statutes relate to UTMB, not UTMB-CMC, as an arm of the state. (*Id.*) Plaintiff argues that the connection between UTMB-CMC and the cited statutes "is too tenuous" for UTMB-CMC to be an arm of the state. (*Id.*)

Second, Plaintiff argues that Defendant UTMB-CMC failed to properly brief the second *Clark* factor by ignoring a two-step inquiry into (1) the state's liability in the event of a judgment against the defendant, and (2) the state's liability for the defendant's general debts and obligations.

5

(*Id.* at 15.) Plaintiff asserts that Defendant's attempts to address the two-step inquiry in its reply (doc. #56) are conclusory and, thus, insufficient. (Doc. #58 at 6-9.)

Third, Plaintiff similarly argues that Defendant failed to adequately address the third *Clark* factor. Plaintiff asserts that the Fifrth Circuit requires a party to specifically address the independence of management and the "commissioners who govern the entity." (*Id.* at 22.) Plaintiff then cites Dr. Murray's management of the UTMB-CMC's day-to-day operations as evidence of Defendant's independence. (*Id.* at 23.)

Fourth, Plaintiff argues that UMTB-CMC's geographical footprint covering less than the whole State of Texas weighs against finding Defendant to be an arm of the state. (*Id.* at 25.) According to Plaintiff, because "Defendant CMC and the TTUHSC [Texas Tech University Health Sciences Center, which also provides state inmate healthcare] operate in distinct, separate geographic regions," Plaintiff contends Defendant does not have "jurisdiction throughout Texas."

Next, Plaintiff notes that while the fifth *Clark* factor carries little weight, it still suggests finding Defendant UTMB-CMC is not an arm of the state. (*Id.* at 26.) Plaintiff cites numerous cases where Defendant UTMB-CMC has been sued. (*Id.* at 26-27.)

Sixth, Plaintiff argues that the evidence cited by Defendant to support its claim that it cannot hold property should be struck, and Defendant's reliance on caselaw about other entities "holds no weight." (*Id.* at 27.) Plaintiff concludes that "without any evidence in the record or explicit statutory authority, Defendant has failed to meet its burden of proof for the sixth *Clark* factor, thereby weighing against immunity." (*Id.* at 28.)

## II. Legal Standard

Summary judgment should only be granted if the moving party can show that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). This rule places the initial burden on the moving party to identify

6

those portions of the record which it believes demonstrate the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Stults v. Conoco, Inc.* 76 F.3d 651, 655-56 (5th Cir. 1996) (citations omitted). A dispute is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-56 (1986). A fact is material when it is relevant or necessary to the ultimate conclusion of the case. *Id.* at 248. The movant's burden is only to point out the absence of evidence supporting the nonmovant's case. *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir.); *cert. denied*, 506 U.S. 832 (1992).

Once the moving party has carried its burden of demonstrating that the absence of a genuine dispute of material fact, the nonmoving party bears the burden of coming forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In considering a motion for summary judgment, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby, Inc.*, 477 U.S. at 255. However, the non-movant may not rest on mere allegations or denials of its pleadings but must respond by setting forth specific facts indicating a genuine issue for trial. *Webb v. Cardiothoracic Surgery Assocs. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir. 1998). The court must consider all the evidence but refrain from making any credibility determinations or weighing the evidence. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citation omitted).

Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.),

7

*cert. denied*, 513 U.S. 871 (1994).  The party opposing summary judgment is required to identify specific evidence in the record and articulate the precise manner in which that evidence supports his claim.  *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment.  *Id.*; *see also Skotak*, 953 F.2d at 915–16 & n.7; FED. R. CIV. P. 56(c)(3) ("[T]he court need consider only the cited materials.").  If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted.  *Celotex*, 477 U.S. at 322–23.

Here, where UTMB-CMC claims Eleventh Amendment immunity, "it must come forward with evidence which would "entitle it to a directed verdict if the evidence went uncontroverted at trial."  *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264–65 (5th Cir. 1991) (internal quotations omitted); *see Matter of Lasala*, 543 F. Supp. 3d 381, 385 n22 (E.D. La. 2021); *see also Blasko v. Miller*, No. 4:21-CV-698-Y, 2023 WL 4108846, at *1 (N.D. Tex. June 21, 2023) ("[D]efendant moving for summary judgment on an affirmative defense must show that no reasonable trier of fact could find other than for the defendant; otherwise, there is a genuine issue of fact, and summary judgment cannot be granted.").

### III. Discussion

In the earlier Report and Recommendation, the undersigned requested additional briefing on two questions.  (Doc. #46 at 14.)  First, is Defendant UTMB-CMC a separate entity from UTMB?  Second, if UTMB-CMC is a separate entity from UTMB, is UTMB-CMC an arm of state under the *Clark* factors?  The undersigned will address each question in turn.

8

A. <u>Defendant UTMB-CMC is Not a Separate Entity from UTMB and is, therefore, Entitled to Sovereign Immunity as a State Agency</u>[2]

The undersigned is persuaded that Defendant UTMB-CMC is an extension of UTMB, which is well-established as an arm of the state entitled to sovereign immunity. (Doc. ##52 at 14-17, 56 at 1-5.) As a matter of law, courts treat UTMB-CMC as synonymous with UTMB. *See, e.g.*, *Salazar v. U.T.M.B. C.M.C.*, No. 5:19-CV-124-BQ, 2020 WL 6556031 at *3 (N.D. Tex. Jan. 27, 2020), R&R adopted sub nom.* 2020 WL 5757491 (N.D. Tex. Sept. 28, 2020) (supporting the proposition that UTMB-CMC is an arm of the state by citing caselaw that references UTMB more generally). The undersigned is also persuaded that the Fifth Circuit's holding in *Canada Hockey* that Texas A&M's athletic department is an extension of the university applies to UTMB-CMC's status as an extension of UTMB. *Canada Hockey, L.L.C. v. Texas A&M Univ. Athletic Dep't*, No. 20-20503, 2022 WL 445172 (5th Cir. Feb. 14, 2022).

The record also supports the finding that UTMB-CMC is not a separate entity from UTMB. Significantly, in his affidavit, the Senior Vice President of UTMB-CMC, Dr. Murray states that as "[t]he Correctional Managed Care Division is part of UTMB, it is not a separate entity." (Doc. #52-1 at 3.) The contract between UTMB and TDCJ which governs UTMB-CMC operations likewise treats UTMB-CMC as merely an extension of UTMB. (Doc. #52-2 at 33.) Section K of the contract references "all persons employed by the UTMB and paid from the proceeds of this contract," rather than persons employed by UTMB-CMC. (*Id.*) In fact, Section K provides that the costs associated employees that are "not reimbursed by the aforementioned agencies may be reimbursed by the TDCJ using Correctional Managed Health Care Program funding." (*Id.*) If

---

[2] The undersigned has not engaged in a jural entity analysis of UTMB-CMC, as caselaw suggests such an analysis is done under Rule 12(b)(6). Sovereign immunity must be determined first.

UTMB-CMC was an independent entity, it would presumably be a separate party to the contract and financially responsible for its employees.

The undersigned notes that the record contains evidence of a UTMB-CMC human resource department and hiring by UTMB-CMC. (Docs. ##53-2 at 30, 53-4, 53-5.) However, these facts do not mean that UTMB-CMC is a separate entity from UTMB for purposes of Eleventh Amendment immunity. In fact, the state audit of UTMB-CMC cited by Plaintiff to assert Defendant is "entirely separate" from UTMB, (doc. #53 at 11), consistently refers to UTMB-CMC as a "division" of UTMB. (Doc. #53-2 at 2, 4, 22, 33.) The overwhelming weight of the evidence in the record indicates UTMB-CMC is merely an extension of UTMB that works with TDCJ to provide healthcare to inmates in Texas. Accordingly, UTMB-CMC is entitled to sovereign immunity as an extension of UTMB and there is no genuine dispute of a material fact on this issue.

### B.  The *Clark* Factors Suggest UTMB-CMC is Entitled to Sovereign Immunity

Even if there was a dispute about whether UTMB-CMC is a separate legal entity from UTMB, the *Clark* factors suggest it is an arm of the state for Eleventh Amendment purposes. Admittedly, UTMB-CMC's integration into UTMB complicates an analysis of *Clark* factors. For example, while a state agency can point to an explicit statutory grant of power or indemnification by the state, UTMB-CMC will often have to rely on evidence about UTMB.

#### i. Statutes and Precedent Suggest UTMB-CMC is Entitled to Sovereign Immunity

The first *Clark* factor suggests UTMB-CMC is entitled to sovereign immunity. Even if the UTMB-CMC were a separate entity from UTMB for the purposes of Eleventh Amendment immunity, it is still instructive that caselaw treats UTMB-CMC as cloaked in sovereign immunity. *See, e.g.*, *Salazar*, 2020 WL 6556031 at *3; *Nchotebah v. UTMB Corr. Managed Care*, No. 9:20-CV-00004-RC, 2020 WL 7053264, at *4 (E.D. Tex. Sept. 10, 2020*), R&R adopted*, 2020 WL

6054400 (E.D. Tex. Oct. 14, 2020) ("UTMB-CMC and TDCJ are entitled to Eleventh Amendment immunity."). *But see Univ. of Texas Med. Branch Corr. Managed Care v. Alexander*, No. 03-12-00502-CV, 2012 WL 6097289 (Tex. App.—Austin Dec. 4, 2012) (noting UTMB-CMC filed an appeal and then voluntary dismissed that appeal). The weight of this caselaw, though limited, suggests that the first *Clark* factor counsels in favor of finding UTMB-CMC is entitled to sovereign immunity.

> ii. *Defendant UTMB-CMC's Funding Suggests it is Entitled to Sovereign Immunity*

Plaintiff claims that Defendant UTMB-CMC failed to address the two-prong inquiry for the second *Clark* factor required by the Fifth Circuit. (Doc. #53 at 16.) It is unclear whether the two-prong inquiry is mandatory or simply instructive. In *Hudson*, the Fifth Circuit held that "in assessing this second [*Clark*] factor, we conduct inquiries into, first and most importantly, the state's liability in the event there is a judgment against the defendant, and second, the state's liability for the defendant's general debts and obligations." *Hudson v. City of New Orleans*, 174 F.3d 677, 687 (5th Cir. 1999). Plaintiff claims the two-prong inquiry was recently reaffirmed in the Fifth Circuit's *en banc* opinion in *Daves* and must be addressed. (Doc. #53 at 16.) The *Daves* panel cites *Hudson* to identify the six *Clark* factors to determine if a county judge "acts for the state." *Daves v. Dallas Cnty., Texas*, 22 F.4th 522, 532-33 (5th Cir. 2022). The *Daves* panel, however, does not explicitly apply the two-prong inquiry and, instead, interprets *Hudson* as a command to "prioritize identifying the source of the overall funding or the primary concern of the entity or official." *Daves*, 22 F.4th at 533. Thus, Plaintiff's argument that the Fifth Circuit requires a two-step inquiry is not supported by citing *Daves*.

Most other cases cited by Plaintiff suggest the two-prong inquiry is mandatory. *See, e.g.*, *Stratta v. Roe*, 961 F.3d 340, 353 (5th Cir. 2020) (internal quotations omitted) ("In assessing this

11

second factor, we conduct inquiries into, first and most importantly, the state's liability in the event there is a judgment against the defendant, and second, the state's liability for the defendant's general debts and obligations."); *U.S. ex rel. Barron v. Deloitte & Touche, L.L.P.*, 381 F.3d 438, 440 (5th Cir. 2004). However, at least one case cited by Plaintiff does not employ a two-prong inquiry for the second *Clark* factor. *See, e.g.*, *Williams v. Dallas Area Rapid Transit*, 242 F.3d 315, 320 (5th Cir. 2001). The undersigned deems it appropriate to apply the two-prong inquiry in accordance with the weight of the caselaw cited by both parties.

Under the two-prong inquiry, the second *Clark* factor suggests UTMB-CMC is an arm of the state. The contact between UTMB and TDCJ that governs UTMB-CMC's operations explicitly notes that costs associated with employees that are "not reimbursed by the [UTMB and TDCJ] may be reimbursed by the TDCJ using Correctional Managed Health Care Program funding." (Doc. #52-2 at 33.) This indicates that UTMB-CMC is not a distinct entity with its own financial independence. Also, based on Dr. Murray's unobjected and uncontroverted testimony, "the employees who work within the Correctional Manages Care Division are UTMB employees who report up a chain of command with UTMB's President at the top of the organization." (Doc. #52-1 at 3.) Moreover, UTMB employees are entitled to indemnification by the state, TEX. CIV. PRAC. & REM. CODE ANN. § 104.001 (West), and legal representation by the Office of the Attorney General. TEX. CIV. PRAC. & REM. CODE ANN. § 104.004 (West). Indeed, in this action the Defendants, including the named defendant UTMB-CMC, Dr. Julye, and two nurses, are defended by the Office of the Attorney General of the State of Texas.

Finally, as set forth above, the undersigned is also persuaded that UTMB-CMC is merely a division of UTMB, which is itself an arm of the state per statute, TEX CONST. art. 7 §18(b)(9); TEX. EDUC. CODE §74.001; TEX. GOV'T CODE §§501.051(a)-(e), .060(b), and caselaw. *Lewis v.*

12

*Univ. of Tex. Med. Branch at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011); *Bessman v. Powell*, 991 F. Supp. 830, 837 (S.D. Tex. 1998). This means any liabilities of UTMB-CMC are liabilities of UTMB. Accordingly, the undersigned recommends finding that this "most important" *Clark* factor supports finding UTMB-CMC is an arm of the state. (Doc. #53 at 15.); *see Bonin v. Sabine River Auth.*, 65 F.4th 249, 256 (5th Cir. 2023).

> iii. *Defendant UTMB-CMC's Lack of Local Autonomy Suggests it is Entitled to Sovereign Immunity*

Citing *Stratta v. Roe*, Plaintiff claims Defendant oversimplified the third *Clark* factor by failing to analyze the "extent of the entity's independent management authority… as well as the independence of the individual commissioners who govern the entity." (Doc. #53 at 22.) (citing *Stratta v. Roe*, 961 F.3d 340, 354 (5th Cir. 2020). However, *Stratta* states that "audit and reporting requirements [do] not justify finding a lack of local autonomy," but that a court should look to "the scope of the entity's authority over its day-to-day activities and the appointment process of its directors." *Stratta*, 961 F.3d at 354-55.

Here, there is no genuine dispute to the following facts: the Senior Vice President in charge of Defendant UTMB-CMC views it as merely a part of UTMB, (doc. #52-1 at 2), the UTMB organizational chart shows UTMB-CMC as a part of UTMB, (*Id.* at 6), and contracts between UTMB and TDCJ determine UTMB-CMC activities, (doc. #52-2). The record shows, as Plaintiff notes, that Dr. Murray manages UTMB-CMC's day-to-day operations, (doc. #51-1 at 2), but this does not change UTMB-CMC's status as subordinate to UTMB management. In fact, as Plaintiff points out, the Board of Regents of the University of Texas specifically delegated to Dr. Murray the "authority to execute and deliver standard affiliation and program agreements associated with correctional managed care." (Doc. #53-12.) If UTMB-CMC was truly independent, it would not need an explicit delegation to "execute and deliver" certain types of contracts. The undersigned is

13

persuaded that UTMB-CMC lacks local autonomy for the purposes of Eleventh Amendment immunity.

### iv. Defendant UTMB-CMC's State-Wide Services Suggest it is Entitled to Sovereign Immunity

The undersigned is unpersuaded by Plaintiff's argument that because TTUHSC provides inmate healthcare in parts of Texas that UTMB-CMC is not a state-wide entity. There is no dispute that Defendant UTMB-CMC addresses the statewide problem of inmate healthcare. (Doc. #52-1 at 4.) UTMB-CMC has a wide geographic footprint, cares for 78% of offenders in TDCJ custody, and provides healthcare to inmates from all over Texas at local prison units and at the hospital in Galveston. (*Id.*). Under Fifth Circuit caselaw, an arm of the state may have a statewide function even if its facilities are geographically limited. *See, e.g.*, *Daniel v. Univ. of Tex. Sw. Med. Ctr.*, 960 F.3d 253, 259 (5th Cir. 2020). Accordingly, this factor weighs in favor of finding Defendant UTMB-CMC is an arm of the state.

### v. Defendant UTMB-CMC's Status as a Defendant in Previous Cases Weighs Against Finding Defendant is an Arm of the State

The fifth *Clark* factor "carries little weight." *Springboards to Educ., Inc. v. McAllen Indep. Sch. Dist.*, 62 F.4th 174, 182 (5th Cir. 2023). The record does not contain any evidence that Defendant UTMB-CMC has sued under its own name,[3] but Plaintiff cites several cases where Defendant UTMB-CMC was named as a Defendant. *See, e.g.*, *Crowder v. Univ. of Tex. Med. Branch Corr. Managed Care, (UTMB-CMC)*, 571 U.S. 1141 (2014); *Nchotebah v. Univ. of Tex. Med. Branch - Corr. Managed Care*, No. 9:20-CV-00004-RC-ZJH, 2021 WL 5988430 (E.D. Tex. Oct. 19, 2021), *R&R adopted*, No. 9:20-CV-0004-RC-ZJH, 2021 WL 5238843 (E.D. Tex. Nov. 8,

---

[3] Defendant argues that "UTMB-CMC does not have authority to sue and be sued in its own name." (Doc. #52 at 22.) The portion of the appendix cited does not specifically address the issue and, instead, consists of testimony from Dr. Murray that "ultimately the Correctional Care Division is only a part of UTMB." (Doc. #52-1 at 3.)

14

2021); *Univ. of Tex. Med. Branch Corr. Managed Care v. Alexander*, No. 03-12-00502-CV, 2012 WL 6097289 (Tex. App. Dec. 4, 2012). Accordingly, the undersigned finds that this factor weighs slightly against finding Defendant UTMB-CMC is an arm of the state.

### vi. The Sixth Clark Factor is Inconclusive

The sixth factor likewise carries little weight. *See*, *Hudson*, 174 F.3d at 682 (noting courts "typically deal with the last two factors in a fairly brief fashion"). The following facts are undisputed: Defendant UTMB-CMC must submit a list of its capital assets to TDCJ, and, in the event Defendant UTMB-CMC is relieved of its responsibility to care for incarcerated people, then its facilities would revert to TDCJ's possession. (Doc. #52-2 at 3, 34.) However, the undersigned is persuaded by Plaintiff's assertion that the reporting requirements and potential of future reversions to the state are insufficient to meet the sixth *Clark* factor. *Springboards to Educ., Inc. v. McAllen Indep. Sch. Dist.*, 62 F.4th 174, 183 (5th Cir. 2023) ("Our precedent rejects the argument that this factor points toward immunity where the entity held title but 'all of [the entity's] property ultimately belong[ed] to the state.'") (quoting *Vogt v. Bd. of Comm'rs of Orleans Levee Dist.*, 294 F.3d 684, 696 (5th Cir. 2002)). Without evidence of which entity holds title to the relevant property, the undersigned finds the final *Clark* factor to be inconclusive.

## IV. Conclusion

The undersigned concludes that UTMB-CMC is a mere extension of UTMB and is, thus, entitled to UTMB's sovereign immunity. Additionally, the undersigned finds that even if a *Clark* factor analysis is warranted, the first four *Clark* factors counsel in favor of finding Defendant UTMC-CMC is an arm of the state, while the fifth factor counsels against such a finding, and the sixth factor is inconclusive. As the last two factors carry the least weight, the undersigned further recommends finding that the record entitles Defendant UTMB-CMC, if this case went to trial, to

a directed verdict finding it is an arm of the state, and thus, is entitled to sovereign immunity. The undersigned recommends finding that Plaintiff's claims against Defendant UTMB-CMC are barred by Eleventh Amendment immunity and should be dismissed without prejudice.

## V. Recommendation

For the foregoing reasons, the undersigned recommends **GRANTING** Defendant UTMB-CMC's Motion for Summary Judgment. (Doc. #52.) Plaintiff's claims against UTMB-CMC should be dismissed without prejudice.

## VI. Objections

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*,

79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this the 21st day of November, 2023.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE